# EXHIBIT A

FILED: DUTCHESS COUNTY CLERK 08/31/2016 03:49 PM  INDEX NO. 2016-52186
NYSCEF DOC. NO. 1                                    RECEIVED NYSCEF: 08/31/2016

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF DUTCHESS**

---------------------------------------------------x

Elizabeth Petrosino, individually on behalf of
herself and all others similarly situated,

                          **Plaintiff,**

           -against-

Stearn's Products, Inc. d/b/a Derma E®,

                        **Defendant.**

---------------------------------------------------x

Index No.
Date Purchased:

Plaintiff designates Dutchess County as the place
of trial

The basis of venue is
Plaintiff's residence in Dutchess County

**SUMMONS**

To the above named Defendant:

**YOU ARE HEREBY SUMMONED** and required to answer the annexed Complaint in this
action and to serve a copy of your answer, or, if the Complaint is not served with this summons,
to serve a notice of appearance, upon Plaintiff's Attorneys, at the address stated below, within 20
days after the service of this summons, exclusive of the day of service (or within 30 days after
the service is complete if this summons is not personally delivered to you within the State of
New York); upon your failure to appear or answer, judgment will be taken against you by default
for the relief demanded in the Complaint, together with the costs of this action.

Dated: Poughkeepsie, New York
       August 31, 2016

                               **THE SULTZER LAW GROUP, P.C.**

                                    /s/ Jason P. Sultzer

                          By: _____

                                  Jason P. Sultzer, Esq.
                                  Joseph Lipari, Esq.
                                  *Attorneys for Plaintiff*
                                  85 Civic Center Plaza, Suite 104
                                  Poughkeepsie, NY 12601
                                  (845) 483-7100

Defendant's Address:
Dennis Duskin
1180 Patricia Avenue, Suite 200
Simi Valley, CA 93065

FILED: DUTCHESS COUNTY CLERK 08/31/2016 03:49 PM
INDEX NO. 2016-52186
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 08/31/2016

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF DUTCHESS

---------------------------------------------------- x

Elizabeth Petrosino, individually on behalf of
herself and all others similarly situated,

                            Plaintiff,

        -against-

Stearn's Products, Inc. d/b/a Derma E®,

                      Defendant.

---------------------------------------------------- x

: Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, Elizabeth Petrosino (hereinafter "Plaintiff") individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1.    This action seeks to remedy the deceptive and misleading business practices of Stearn's Products, Inc. d/b/a Derma E® (hereinafter "Defendant") with respect to the marketing and sales of the following (hereinafter the "Products") throughout the State of New York and the country:

- Derma e Deep Wrinkle Peptide Moisturizer

- Derma e Deep Wrinkle Peptide Serum

- Derma e BB Crème, Light Tint, SPF 25

- Derma e BB Crème, Medium Tint, SPF 25

- Derma e Age-Defying Antioxidant Day Crème

1

- Derma e Age-Defying Antioxidant Night Crème

- Derma e Microdermabrasion Scrub

- Derma e Deep Wrinkle Peptide Eye Crème

- Derma e Soothing Redness Reducing Serum

- Derma e Soothing Oil-Free Moisturizer with Pycnogenol

- Derma e Soothing Moisturizing Crème with Pycnogenol

- Derma e Evenly Radiant Brightening Serum

- Derma e Evenly Radiant Brightening Day Crème SPF 15

- Derma e Evenly Radiant Brightening Night Crème

- Derma e Evenly Radiant Dark Circle Eye Crème

- Derma e Purifying Youth Serum

- Derma e Purifying Oil-Free Moisturizer

- Derma e Hydrating Mask with Hyaluronic Acid

- Derma e Hydrating Serum with Hyaluronic Acid

- Derma e Hydrating Day Crème and Hyaluronic Acid

- Derma e Hydrating Night Crème with Hyaluronic Acid

- Derma e Clear Vein Crème

- Derma e Skin Lighten

- Derma e Firming DMAE Eye Lift

- Derma e Age-Defying Antioxidant Moisturizer SPF 15

- Derma e Age-Defying Antioxidant Eye Crème

- Derma e Firming DMAE Serum

- Derma e Firming DMAE Moisturizer

2

- Derma e Skinbiotics Treatment Crème

- Derma e Anti-Wrinkle Vitamin A & Green Tea Advanced Crème

- Derma e Soothing Eye Gel with Pycnogenol

- Derma e Hydrating Eye Crème with Hyaluronic Acid

- Derma e Scar Gel

- Derma e Psorzema Crème

- Derma e Stretch Mark Crème

- Derma e CoQ10 Super Repair Serum

- Derma e CoQ10 Super Repair Crème

- Derma e CoQ10 Super Repair Eye Crème

- Derma e Antioxidant Natural Sunscreen SPF 30 Oil-Free Face Lotion

- Derma e Antioxidant Natural Sunscreen SPF 30 Body Lotion

- Derma e Very Clear Moisturizer

- Derma e Intensive Therapy Foot Crème

- Derma e Purifying 2-in-1 Charcoal Mask

- Derma e Anti-Wrinkle Vitamin A Night Serum

- Derma e Anti-Wrinkle Vitamin A Glycolic Mask

- Derma e Overnight Peel

- Derma e Soothing Cleanser with Pycnogenol

- Derma e Soothing Toner with Pycnogenol

- Derma e Very Clear Acne Cleanser

- Derma e Purifying Gel Cleanser

- Derma e Purifying Toner Mist

3

- Derma e Purifying Daily Detox Scrub

- Derma e Hydrating Scrub

- Derma e Hydrating Cleanser with Hyaluronic Acid

- Derma e Evenly Radiant Brightening Cleanser

- Derma e Evenly Radiant Brightening Toner

- Derma e Firming DMAE Cleanser

- Derma e Firming DMAE Toner

- Derma e Vitamin E Intensive Therapy Body Balm

- Derma e Vitamin E 12,000 IU Crème

- Derma e Tea Tree and E Oil

- Derma e Tea Tree and E Antiseptic Crème

- Derma e Tea Tree and E Face and Body Wash

- Derma e Itch Relief Lotion

- Derma e Anti-Wrinkle Vitamin A Eye Crème

- Derma e Anti-Wrinkle Vitamin A Retinyl Palmitate Crème

- Derma e Anti-Wrinkle Vitamin A Moisturizing Gel

- Derma e Very Clear Acne Scrub

- Derma e Exfoliating Scrub with Fruit Enzymes

- Derma e Anti-Wrinkle Vitamin A Glycolic Cleanser

- Derma e Anti-Wrinkle Vitamin A Glycolic Toner

- Derma e Anti-Wrinkle Vitamin A Glycolic Scrub

- Derma e Hydrating Mist with Hyaluronic Acid

- Derma e Vitamin E Intensive Therapy Body Lotion, Fragrance-Free

4

- Derma e Vitamin E Intensive Therapy Body Lotion, Lavender-Neroli

- Derma e CoQ10 Super Repair Cleanser

- Derma e CoQ10 Super Repair 2-in-1 Scrub/Mask

- Derma e Anti-Wrinkle Vitamin A & E Treatment Oil

- Derma e Makeup Remover

- Derma e Psorzema Body Wash

- Derma e Scalp Relief Shampoo

- Derma e Scalp Relief Conditioner

- Derma e Very Clear Acne Spot Treatment

- Derma e Vitamin E Skin Oil 14,000 I.U.

- Derma e Age-Defying Antioxidant Hand Crème

- Derma e Hydrating Facial Wipes

- Derma e Vitamin E Intensive Therapy Hand Crème

2.      Defendant manufactures, sells, and distributes the Products using a marketing and advertising campaign centered around claims that appeal to health conscious consumers, i.e., that its Products are "Natural".  However, Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products contain synthetic ingredients.

3.      Plaintiff and those similarly situated ("Class Members") relied on the Defendant's misrepresentations that the Products are "Natural" when purchasing the Products.  Plaintiff and Class Members paid a premium for the Products over and above comparable products that did not purport to be "Natural."  Given that Plaintiff and Class Members paid a premium for the Products based on the Defendant's misrepresentations that they are "Natural," Plaintiff and Class Members suffered an injury in the amount of the premium paid.

5

4.      Defendant's conduct violated and continues to violate, inter alia, New York General Business Law §§ 349 and 350.  Defendant breached and continues to breach its express warranties regarding the Products.  Defendant has been and continues to be unjustly enriched. Accordingly, Plaintiff brings this action against the Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

5.      Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products, and everyday household products.  Companies such as the Defendant have capitalized on consumers' desire for purportedly "natural products."  Indeed, consumers are willing to pay, and have paid, a premium for products branded "natural" over products that contain synthetic ingredients.  In 2010, sales of natural products grew 6% to $117 billion.[1]  Reasonable consumers, including Plaintiff and Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

6.      Despite the Products containing a number of synthetic ingredients, Defendant markets the Products as being "Natural". The Products' labeling is depicted below:

---

[1] *About the Natural Products Association,* NATURAL PRODUCTS ASSOCIATION (last accessed July 3, 2015), http://www.npainfo.org/NPA/About_NPA/NPA/AboutNPA/AbouttheNaturalProductsAssociation.aspx?hkey=8d3a1 5ab-f44f-4473-aa6e-ba27ccebcbb8; *Chemical Blessings What Rousseau Got Wrong*, THE ECONOMIST, Feb. 4, 2008, available at http://www.economist.com/node/10633398; *see also* Hunger Oatman-Standford, *What Were We Thinking? The Top 10 Most Dangerous Ads*, COLLECTORS WEEKLY (Aug. 22, 2012), http://www.collectorsweekly.com/articles/the-top-10-most-dangerous-ads/ (featuring advertisements for dangerous synthetic chemicals that were once marketed as safe).

6









8

7.     As is depicted below, many of the Products' contain the following synthetic ingredients:

| Synthetic Ingredients |
| --- |
| • Glycerin |
| • Cetyl Alcohol |
| • Glyceryl Stearate |
| • Tocopheryl Acetate |
| • Polysorbate 20 |
| • Xanthan Gum |
| • Dimethicone |
| • Phenoxyethanol |
| • Ethylexylglycerin |
| • Potassium Sorbate |
| • Zinc Oxide |
| • Titanium Dioxide |
| • Glyceryl Stearate Citrate |
| • Glyceryl Stearate |
| • Stearyl Alcohol |
| • Cetearyl Alcohol |
| • Decyl Glucoside |
| • Coco-Glucoside |
| • Cocamidopropyl Betaine |
| • Sodium Benzoate |
| • Glycolic Acid |

8.     Defendant's representations that the Products are "Natural" are false, misleading, and deceptive because the Products contain multiple ingredients that are, as set forth and described below, synthetic and artificial.

   a. **Zinc Oxide** is a synthetic compound. *See, e.g.*, 7 C.F.R. § 205.601(j)(6)(ii).  Zinc oxide used in commercial purposes is usually produced by chemical synthesis or by vaporizing metallic zinc at extreme high heat.

9

b. **Dimethicone** is a synthetic ingredient listed under 21 C.F.R. § 347.10. It is a polydimethylsiloxane obtained by hydrolysis and polycondensation of dichlorodimethylsilane and chlorotrimethylsilane. [2]

c. **Cetearyl Alcohol/Cetyl Alcohol/Stearyl Alcohol** is a synthetic substance and adjuvant. *See* 21 C.F.R. §172.515.

d. **Potassium Sorbate** is a synthetic preservative.[3] *See* 21 C.F.R. § 582.3640. It is created by using potassium hydroxide (KOH) to neutralize sorbic acid (C6H8O2). The resulting potassium sorbate may be crystallized from aqueous ethanol. Studies have shown Potassium Sorbate to have genotoxic effects on humans and other mammals.[4] It causes chromosomal aberrations in cells, which can trigger the development of cancer.[5]

e. **Sodium benzoate** is a synthetic preservative.[6] Sodium benzoate is produced by the neutralization of benzoic acid with sodium hydroxide, or by adding benzoic acid to a hot concentrated solution of sodium carbonate until effervescence ceases. The solution is then evaporated, cooled and allowed to crystalize or evaporate to dryness, and then granulated. It does not occur naturally.[7] Sodium benzoate has been shown to cause DNA damage and chromosomal aberrations.[8] When sodium benzoate combines with ascorbic acid (an ingredient common in

---

[2] https://www.truthinadvertising.org/wp-content/uploads/2014/07/Segedie-v.-Hain-Celestial-Group-complaint.pdf
[3] http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm274535.htm.
[4] Sevcan Mamur et al., *Does Potassium Sorbate Induce Genotoxic or Mutagenic Effects in Lymphocytes?*, TOXICOLOGY IN VITRO 790, 793 (2010).
[5] *Id.*
[6] http://www.ewg.org/skindeep/ingredient/705989/SODIUM_BENZOATE/;
http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm274535.htm.
[7] 21 C.F.R. § 184.1733.
[8] N. Zengin et al., *The Evaluation of the Genotoxicity of Two Food Preservatives: Sodium Benzoate and Potassium Benzoate*, FOOD AND CHEMICAL TOXICOLOGY 763, 764-68 (2011).

10

many food products) the two substances can react to produce benzene, which is a highly toxic carcinogen.

f.  **Xanthan Gum** is a polysaccharide derived from the fermentation of sugars by anthomonas campeseri bacterium and purification using isopropyl alcohol.  It is listed as a synthetic ingredient by federal regulation and is typically used as a thickening or stabilizing agent in beverages and as emulsifiers in salad dressings. *See* 7 C.F.R. § 205.605(b).  A 2012 article in the Journal of Pediatrics noted that the U.S. Food & Drug Administration issued warnings that products containing xanthan gum have been linked to illness and death in infants.[9]

g.  **Glyceryl Stearate** is a synthetic mixture of variable proportions of glyceryl monostearate, glyceryl monopalmitate, and glyceryl esters of fatty acids present in commercial stearic acid.  Glyceryl monostearate is prepared by glycerolysis of certain fats or oils esterification, with glycerin, of stearic acid. *See* 21 C.F.R. §184.1324.

h.  **Glyceryl Stearate Citrate,** is a synthetic mixture of variable proportions of glyceryl monostearate, glyceryl monopalmitate, citric acid esters and glyceryl esters of fatty acids present in commercial stearic acid.  Glyceryl monostearate is prepared by glycerolysis of certain fats or oils esterification, with glycerin, of stearic acid. *See* 21 C.F.R. §184.1324.

i.  **Cocamidopropyl Betaine (Coco Betaine)** is a synthetic surfactant. [10]

---

[9] Jennifer Beal, MPH et al., *Late Onset Necrotizing Enterocolitis in Infants Following Use of a Xanthan Gum-Containing Thickening Agent*, 161 THE JOURNAL OF PEDIATRICS 2, 354 (2012).
[10] http://www.fda.gov/downloads/CombinationProducts/JurisdictionalInformation/RFDJurisdictionalDecisions/RedactedDecisionLetters/UCM113805.pdf

11

j.  **Glycolic Acid** is a synthetic ingredient registered as a disinfecting cleaner and a disinfectant/sanitizer for non-food contacting, hard non-porous surfaces in residential and public access premises. [11]

k.  **Polysorbate-20** is a synthetic emulsifier and/or surface-active agent. *See* 21 C.F.R. § 178.3400.

l.  **Phenoxyethanol** is a synthetic substance and adjuvant. *See* 21 C.F.R. §172.515. [12]

m.  **Decyl Glucoside** is a synthetic ingredient obtained by the condensation of decyl alcohol and glucose. [13]

n.  **Coco Glucoside** is a synthetic ingredient obtained by the condensation of glucose and coconut alcohol. [14]

o.  **Tocopherol (Acetate)** is a synthetic, inert ingredient used pre and post-harvest as an ingredient in pesticide formulations applied to growing crops or to raw agricultural commodities after harvest. *See* 40 C.F.R. §180.910.

p.  **Titanium Dioxide** is a color additive that is synthetically prepared Ti02, free from admixture with other substances. [15]

q.  **Ethylhexylglycerin** is a synthetic derived from vegetable glycerin. (See below).

r.  **Glycerin (Vegetable)** is a factory-produced texturizer that is created by complex processing.  It is recognized by federal regulations as synthetic.  *See* 7 C.F.R. §

---

[11] file:///C:/Users/User/Downloads/EPA-HQ-OPP-2011-0422-0002.pdf
[12] The Federal Trade Commission, recognizing that many of these same ingredients are unquestionably synthetic, has filed complaints and entered into consent decrees against companies that have used these ingredients in products promoted as natural. **Attachment A**
[13] http://www.newdirections.com.au/articles/images/Decyl-Glucoside-and-Other-Alkyl-Glucosides-as-Used-in-Cosmetics.pdf
[14] http://www.newdirections.com.au/articles/images/Decyl-Glucoside-and-Other-Alkyl-Glucosides-as-Used-in-Cosmetics.pdf
[15] http://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfcfr/cfrsearch.cfm?fr=73.575

12

205.605(b).  It is commonly used as a filler and thickening agent.  It requires multiple processing steps in an industrial environment to create Glycerin. Therefore, it cannot be described as "natural."  A technical evaluation report compiled by the USDA AMS Agricultural Analytics Division for the USDA National Organic Program explains that Glycerin is "produced by a hydrolysis of fats and oils" and is listed in the USDA Organic Program's National List as a "synthetic nonagricultural (nonorganic) substance."  The same report lists several methods of producing Glycerin, each of which involve numerous steps that include the use of high temperatures and pressure and purification to get an end product.

| Table 2 Processes for producing glycerin by hydrolysis of fats and oils[16] | |
| --- | --- |
| Lemmens Fryer's Process | Oil or fat is subjected in an autoclave to the conjoint action of heat and pressure (about 100 PSI) in the presence of an emulsifying and accelerating agent, e.g. zinc oxide or hydroxide (sodium hydroxide can be substituted) for about eight hours. The strong solution of glycerin formed is withdrawn and replaced by a quantity of hot, clean and preferably distilled water equal to about one third to one fourth of the weight of the original charge of oil or fat and treatment continued for an additional four hours. The dilute glycerin obtained from the latter part of the process is drawn off and used for the initial treatment of the further charge of oil or fat. |
| Budde and Robertson's Process | The oils or fats are heated and mechanically agitated with water and sulphuric acid gas, under pressure in a closed vessel or autoclave. The advantage claimed for the process are that the contents of the vessel are free from foreign matter introduced by reagents and need no purification; that the liberated glycerin is in the form of a pure and concentrated solution; that no permanent emulsion is formed and that the fatty acids are not discolored. |
| Ittner's Process | Coconut oil is kept in an autoclave in the presence of water at 70 atmospheres pressure and 225-245oC temperature and split into fatty acids and glycerin, both |

---

[16] https://www.ams.usda.gov/sites/default/files/media/Glycerin%20Petition%20to%20remove%20TR%202013.pdf

13

| | |
|---|---|
| | being soluble under these conditions in water. The glycerin solution separates in the bottom of the autoclave. The aqueous solution contains at the end of the splitting process more than 30 percent glycerin. |
| Continuous High Pressure Hydrolysis | In this process a constant flow of fat is maintained flowing upward through an autoclave column tower against a downward counterflow of water at a pressure of 600 PSI maintained at temperature of 480-495oF. Under these conditions, the fat is almost completely miscible in water and the hydrolysis take place in a very short time. The liberated fatty acids, washed free of glycerin by the downward percolating water, leave the top of the column and pass through a flash tank while the liberated glycerin dissolves in the downward flow of water and is discharged from the bottom of the tower into the sweet-water storage tank. |

9.      Whether Defendant's labeling of the Products as "Natural" is deceptive is judged by whether it would deceive or mislead a reasonable person. To assist in ascertaining what a reasonable consumer believes the term natural means, one can look to the regulatory agencies for their guidance.

10.      Congress has defined "synthetic" to mean a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources . . . . 7 U.S.C. § 6502 (2.1).

11.      Surveys and other market research, including expert testimony Plaintiff intends to introduce, will demonstrate that the term "natural" is misleading to a reasonable consumer because the reasonable consumer believes that the term "natural," when used to describe goods such as the Products, means that the goods are free of synthetic ingredients. By way of example, according to a consumer survey, "[e]ighty-six percent of consumers expect a 'natural' label to mean processed foods do not contain any artificial ingredients."[17]

---

[17] Urvashi Rangan, Comments of Consumers Union on Proposed Guides for Use of Environmental Marketing Claims, 16 C.F.R. Part 260, Notice of the Federal Trade Commission (2010), *available at* www.ftc.gov/sites/default/files/documents/public_comments/guides-use-environmental-marketing-claims-project-

14

12.     Additionally, Webster's New World Dictionary defines natural as "produced or existing in nature, not artificial or manufactured.[18]

13.     A reasonable consumer's understanding of the term "Natural" comports with that of federal regulators and common meaning.  That is, the reasonable consumer understands the representation that a product is "Natural" to mean that it does not contain any synthetic or artificial ingredients.

14.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

15.     Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer.  That is why, even though the ingredients listed above are identified on the back of the Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand - that these ingredients are synthetic.

16.     Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendant's prominent front-of-the-product claims, representations, and warranties that the Products are "Natural".

17.     Defendant did not disclose that the above listed ingredients are synthetic ingredients.  A reasonable consumer understands Defendant's "Natural" claims to mean that the Products are "Natural" and do not contain synthetic ingredients.

---

no.p954501-00289%C2%A0/00289-57072.pdf (also accessible as Comment 58 at http://www.ftc.gov/policy/public-comments/initiative-353).
[18] http://www.yourdictionary.com/natural#websters.

15

18.     Defendant's representations that the Products are "Natural" induced consumers, including Plaintiff and Class Members, to pay a premium to purchase the Products.  Plaintiff and Class Members relied on Defendant's false and misleading misrepresentations in purchasing the Products at a premium price above comparable alternatives that are not represented to be "Natural."  If not for Defendant's misrepresentations, Plaintiff and Class Members would not have been willing to purchase the Products at a premium price.  Accordingly, they have suffered an injury as a result of Defendant's misrepresentations.

19.     The marketing of the Products as "Natural" in a prominent location on the labels of all of the Products, throughout the Class Period, evidences Defendant's awareness that "Natural" claims are material to consumers.

20.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

21.     Plaintiff and the Class members reasonably relied to their detriment on Defendant's misleading representations and omissions.

22.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as it has already deceived and misled Plaintiff and the Class members.

23.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products labeled "Natural" over comparable products not so labeled.

16

24.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class members in that they:

    a. Paid a sum of money for Products that were not what Defendant represented;

    b. Paid a premium price for Products that were not what Defendant represented;

    c. Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted;

    d. Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented; and

    e. Ingested a substance that was of a different quality than what Defendant promised.

25.     Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiff and the Class members would not have been willing to purchase the Products.

26.     Plaintiff and the Class members paid for Products that were "Natural" but received Products that were not "Natural". The Products Plaintiff and the Class members received were worth less than the Products for which they paid.

27.     Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not bearing a "Natural" label.

28.     Plaintiff and the Class members all paid money for the Products. However, Plaintiff and the Class members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class members purchased,

17

purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## JURISDICTION AND VENUE

29.    Jurisdiction is proper pursuant to New York Civil Practice Law and Rules ("CPLR") §§ 301 & 302 and venue is proper pursuant to CPLR § 503.

30.    This Court has personal jurisdiction over the Defendant because the Defendant conducts and transacts business in the State of New York, has contracts to supply goods within the State of New York, and supplies goods within the State of New York.

31.    Venue is proper because Plaintiff and many Class Members reside in Dutchess County in the State of New York, and Defendant has, at all relevant times, been conducting business throughout Dutchess County in the State of New York.

## PARTIES

**Plaintiff**

32.    Plaintiff is an individual consumer who, at all times material hereto, was a citizen of Dutchess County, New York.  During the Class Period, Plaintiff purchased the Products in the State of New York at various retail stores including CVS in Hopewell Junction, New York.

33.    Had Defendant not made the false, misleading, and deceptive representation that the Products were "Natural", Plaintiff would not have been willing to pay the same amount for the Products, and, consequently, she would not have been willing to purchase the Products. Plaintiff purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products. The Products Plaintiff received were worth less than

18

the Products for which she paid. Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

34.    Defendant, Stearns Products, Inc. is a corporation with its principal place of business in Simi Valley, California.  Defendant manufactures, markets, advertises and distributes the Products throughout the United States.  Defendant created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Products.

## CLASS ALLEGATIONS

35.    Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

36.    The Class is defined as all consumers who purchased the Products anywhere in the State of New York during the Class Period (the "Class").

37.    The Class is properly brought and should be maintained as a class action under Article 9 of the CPLR, satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

38.    Numerosity: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

19

39.   Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

     a.   Whether the Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

     b.   Whether Defendant's misconduct set forth in this Complaint demonstrates that the Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

     c.   Whether the Defendant made false and/or misleading statements to the Class and the public concerning the content and safety of its Products.

     d.   Whether Defendant's false and misleading statements concerning its Products were likely to deceive the public;

     e.   Whether Plaintiff and the Class are entitled to injunctive relief;

     f.   Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

40.   Typicality: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased either or both of the Defendant's Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

41.   Adequacy: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent; her consumer fraud claims are common to all members of the Class and she has a strong interest in vindicating her rights; she has retained counsel competent and experienced in complex class action litigation and

they intend to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and her counsel. The Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

42.     The Class is properly brought and should be maintained as a class action under Article 9 of the CPLR because a class action is superior to traditional litigation of this controversy. Pursuant to Article 9, common issues of law and fact predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices. In addition, this Class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*:

43.     <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

> g.  The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;
>
> h.  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

21

i.   When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

j.   This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

k.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

l.   This class action will assure uniformity of decisions among Class Members;

m.   The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

n.   Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

o.   It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendant's uniform false advertising to purchase its "Natural" Products.

44.   Accordingly, this Class is properly brought and should be maintained as a class action under Article 9 of the CPLR because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

22

## INJUNCTIVE CLASS RELIEF

45.     Article 9 of the CPLR contemplates a class action for purposes of seeking class-wide injunctive relief.  Here, the Defendant have engaged in conduct resulting in misleading consumers about ingredients in its Products.  Since Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct. Plaintiff would purchase the Products again if the ingredients were changed so that they indeed were "Natural".

46.     The injunctive Class is properly brought and should be maintained as a class action under Article 9, satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

p.   Numerosity: Individual joinder of the injunctive Class Members would be wholly impracticable.  Defendant's Products have been purchased by thousands of people throughout the United States.

q.   Commonality: Questions of law and fact are common to members of the Class.  Defendant's misconduct was uniformly directed at all consumers.  Thus, all members of the Class have a common cause against the Defendant to stop its misleading conduct through an injunction.  Since the issues presented by this injunctive Class deal exclusively with Defendant's misconduct, resolution of these questions would necessarily be common to the entire Class.  Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

i.   Resolution of the issues presented in the Article 9 class;

23

    ii.   Whether members of the Class will continue to suffer harm by virtue of Defendant's deceptive product marketing and labeling; and

    iii.   Whether, on equitable grounds, the Defendant should be prevented from continuing to deceptively mislabel their Products as being "Natural."

r.   <u>Typicality</u>: Plaintiff's claims are typical of the claims of the injunctive Class because her claims arise from the same course of conduct (i.e. Defendant's deceptive and misleading marketing, labeling, and advertising practices). Plaintiff is a typical representative of the Class because, like all members of the injunctive Class, she purchased Defendant's Products which were sold unfairly and deceptively to consumers throughout the United States.

s.   <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the injunctive Class.  Her consumer protection claims are common to all members of the injunctive Class and she has a strong interest in vindicating her rights.  In addition, Plaintiff and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

47.    The injunctive Class is properly brought and should be maintained as a class action under Article 9 of the CPLR because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class.  Certification under Article 9 of the CPLR is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendant has marketed its Products using the same misleading and deceptive labeling to all of the Class Members).  Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendant would be prevented

24

from continuing its misleading and deceptive marketing practices and would be required to honestly disclose to consumers the nature of the contents of its Products.  Plaintiff would purchase the Products again if the ingredients were changed so that they were indeed "Natural" as represented by Defendant.

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and All Class Members against Defendant)**

48.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

49.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

50.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the Class Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, labeling, marketing, and promoting the Products.

51.     There is no adequate remedy at law.

52.     Defendant misleadingly, inaccurately, and deceptively presented its Products to consumers.

53.     Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as being "Natural" —is misleading in a material way in that it, *inter alia*, induced Plaintiff and Class Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have.

25

54.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

55.     Plaintiff and the Class Members have been injured inasmuch as they paid a premium for products that were—contrary to Defendant's representations—not "Natural". Accordingly, Plaintiff and the Class Members received less than what they bargained and/or paid for.

56.     Defendant's advertising and product packaging and labeling induced the Plaintiff and Class Members to buy Defendant's Products and to pay a premium price for them.

57.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the Class have been damaged thereby.

58.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and Class Members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

59.     Plaintiff and Class Members seek actual damages under GBL § 349, and expressly waive any right to recover minimum, punitive, treble and/or statutory damages pursuant to GBL § 349.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiff and All Class Members against Defendant)

60.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

61.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or
> commerce or in the furnishing of any service in this state is hereby
> declared unlawful.

62. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or
> of the kind, character, terms or conditions of any employment
> opportunity if such advertising is misleading in a material respect.
> In determining whether any advertising is misleading, there shall
> be taken into account (among other things) not only
> representations made by statement, word, design, device, sound or
> any combination thereof, but also the extent to which the
> advertising fails to reveal facts material in the light of such
> representations with respect to the commodity or employment to
> which the advertising relates under the conditions proscribed in
> said advertisement, or under such conditions as are customary or
> usual . . .

63. Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that the Products are "Natural."

64. Plaintiff and the Class Members have been injured inasmuch as they relied upon the labeling, packaging and advertising and paid a premium for the Products which were— contrary to Defendant's representations—not "Natural". Accordingly, Plaintiff and the Class Members received less than what they bargained and/or paid for.

27

65.     Defendant's advertising, packaging and product labeling induced the Plaintiff and Class Members to buy Defendant's Products.

66.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

67.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

68.     Defendant made the material misrepresentations described in this Complaint in Defendant's advertising, and on the Products' packaging and labeling.

69.     Defendant's material misrepresentation were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

70.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and Class Members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

71.     Plaintiff and Class Members seek actual damages under GBL § 350, and expressly waive any right to recover minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350.

## THIRD CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL LAW § 350-a(1) BY OMISSION
### (On Behalf of Plaintiff and All Class Members against Defendant)

72.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

73.     N.Y. Gen. Bus. Law § 350-a(1) expressly covers material omissions:

> In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual...

74. Defendant's products' labeling and advertising contain misleading and/or unfair material omissions concerning Defendant's Products. The Products' labeling and advertising omit that: 1) the Products contain synthetic ingredients; and 2) the Products are not "Natural".

75. Plaintiff and the Class Members have been injured inasmuch as they relied upon the labels and advertising and paid a premium for Products that, contrary to Defendant's labels and advertising, are not "Natural."

76. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

77. Defendant's dissemination of advertising and labeling containing material omissions of fact constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

78. Defendant's material misrepresentations by way of omission, as described in this Complaint, were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations by way of omission.

29

79.   Defendant's advertising and labeling for the Products induced the Plaintiff and Class Members to buy the Products at a premium price.

80.   Plaintiff and Class Members relied on Defendant's advertising, which was deceptive, false, and contained material omissions.

81.   As a result of Defendant's false and misleading advertising and labeling, the Plaintiff and Class Members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

82.   Plaintiff and Class Members seek actual damages under GBL § 350-a(1), and expressly waive any right to recover minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a(1).

### FOURTH CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
**(On Behalf of Plaintiff and All Class Members Against Defendant)**

83.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

84.   Defendant provided the Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are "Natural".

85.   The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

86.   These affirmations of fact became part of the basis for the bargain and were material to the Plaintiff's and Class Members' transactions.

87.    Plaintiff and Class Members reasonably relied upon the Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

88.    Within a reasonable time after they knew or should have known of Defendant's breach, Plaintiff, on behalf of herself and Class Members, placed Defendant on notice of its breach, giving Defendant an opportunity to cure their breach, which they refused to do.

89.    Defendant breached the express warranty because the Products are not "Natural".

90.    Defendant thereby breached the following state warranty laws:

    a.    Code of Ala. § 7-2-313;

    b.    Alaska Stat. § 45.02.313;

    c.    A.R.S. § 47-2313;

    d.    A.C.A. § 4-2-313;

    e.    Cal. Comm. Code § 2313;

    f.    Colo. Rev. Stat. § 4-2-313;

    g.    Conn. Gen. Stat. § 42a-2-313;

    h.    6 Del. C. § 2-313;

    i.    D.C. Code § 28:2-313;

    j.    Fla. Stat. § 672.313;

    k.    O.C.G.A. § 11-2-313;

    l.    H.R.S. § 490:2-313;

    m.    Idaho Code § 28-2-313;

    n.    810 I.L.C.S. 5/2-313;

    o.    Ind. Code § 26-1-2-313;

31

p.      Iowa Code § 554.2313;

q.      K.S.A. § 84-2-313;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-313;

t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

ii.     II. O.R.C. Ann. § 1302.26;

jj.     12A Okl. St. § 2-313;

kk.     Or. Rev. Stat. § 72-3130;

ll.     13 Pa. Rev. Stat. § 72-3130;

32

mm.    R.I. Gen. Laws § 6A-2-313;

nn.    S.C. Code Ann. § 36-2-313;

oo.    S.D. Codified Laws, § 57A-2-313;

pp.    Tenn. Code Ann. § 47-2-313;

qq.    Tex. Bus. & Com. Code § 2.313;

rr.    Utah Code Ann. § 70A-2-313;

ss.    9A V.S.A. § 2-313;

tt.    Va. Code Ann. § 59.1-504.2;

uu.    Wash. Rev. Code Ann. § 6A.2-313;

vv.    W. Va. Code § 46-2-313;

ww.    Wis. Stat. § 402.313;

xx.    Wyo. Stat. § 34.1-2-313.

91.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
## VIOLATION OF STATE CONSUMER PROTECTION STATUTES
### (On Behalf of Plaintiff and All Class Members)

92.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

93.    Plaintiff and Class Members have been injured as a result of Defendant's violations of the following state consumer protection statutes, which also provide a basis for redress to Plaintiff and Class Members based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

94.    Defendant's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the following jurisdictions:

a.    **Alaska:** Defendant's practices were and are in violation of Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

b.    **Arizona:** Defendant's practices were and are in violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq.*

c.    **Arkansas:** Defendant's practices were and are in violation of Arkansas Code Ann. § 4-88-101, *et seq.*

d.    **California:** Defendant's practices were and are in violation of California Consumer Legal Remedies Act, Civil Code § 1750, *et seq.*, and California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq.*, and California's False Advertising Law, California Business and Professions Code § 17500, *et seq.*

e.    **Colorado:** Defendant's practices were and are in violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

f.    **Connecticut:** Defendant's practices were and are in violation of Connecticut's Gen. Stat. § 42-110a, *et seq.*

g.    **Delaware:** Defendant's practices were and are in violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

h.    **District of Columbia:** Defendant's practices were and are in violation of the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

34

i.   **Florida:**  Defendant's practices were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

j.   **Hawaii:**  Defendant's practices were and are in violation of the Hawaii's Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and Haw. Rev. Stat. § 480-2.

k.   **Idaho:**  Defendant's practices were and are in violation of Idaho's Consumer Protection Act, Idaho Code Ann. § 48-601, *et seq.*

l.   **Illinois:**  Defendant's acts and practices were and are in violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

m.   **Indiana:**  Defendant's practices were and are in violation of Indiana's Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

n.   **Kansas:**  Defendant's practices were and are in violation of Kansas's Consumer Protection Act, Kat. Stat. Ann. § 50-623, *et seq.*

o.   **Kentucky:**  Defendant's practices were and are in violation of Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

p.   **Maine:**  Defendant's practices were and are in violation of the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. Ann. Tit. 5, § 205-A, *et seq.* and 10 Me. Rev. Stat. Ann. § 1101, *et seq.*

q.   **Maryland:**  Defendant's practices were and are in violation of Maryland's Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq.*

35

r.   **Massachusetts:**  Defendant's practices were unfair and deceptive acts and practices in violation of Massachusetts' Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2.

s.   **Michigan:**  Defendant's practices were and are in violation of Michigan's Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.*

t.   **Minnesota:**  Defendant's practices were and are in violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

u.   **Missouri:**  Defendant's practices were and are in violation of Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

v.   **Nebraska:**  Defendant's practices were and are in violation of Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform Deceptive Trade
Practices Act, § 87-302, *et seq.*

w.   **Nevada:**  Defendant's practices were and are in violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

x.   **New Hampshire:**  Defendant's practices were and are in violation of New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*

y.   **New Jersey:**  Defendant's practices were and are in violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

z.   **New Mexico:**  Defendant's practices were and are in violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

aa. **New York:**  Defendant's practices were in and are in violation of New York's

Gen. Bus. Law §§ 349, *et seq.*

bb. **North Carolina:**  Defendant's practices were and are in violation of North

Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1, *et*

*seq.*

cc. **North Dakota:**  Defendant's practices were and are in violation of North

Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15-

01, *et seq.*

dd. **Ohio:**  Defendant's practices were and are in violation of Ohio's Consumer Sales

Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.* and Ohio's Deceptive

Trade Practices Act. Ohio Rev. Code Ann. § 4165.01, *et seq.*

ee. **Oklahoma:**  Defendant's practices were and are in violation of Oklahoma's

Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et seq.*, and Oklahoma's

Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq.*

ff. **Oregon:**  Defendant's practices were and are in violation of Oregon's Unlawful

Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

gg. **Pennsylvania:**  Defendant's practices were and are in violation of Pennsylvania's

Unfair Trade Practice and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et*

*seq.*

hh. **Rhode Island:**  Defendant's practices were and are in violation of Rhode Island's

Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*

ii. **South Dakota:** Defendant's practices were and are in violation of South Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq.*

jj. **Texas:** Defendant's practices were and are in violation of Texas' Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*

kk. **Utah:** Defendant's practices were and are in violation of Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Utah's Truth in Advertising Law, Utah Code Ann. § 13-11a-1, *et seq.*

ll. **Vermont:** Defendant's practices were and are in violation of Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

mm. **Washington:** Defendant's practices were and are in violation of Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq.*

nn. **West Virginia:** Defendant's practices were and are in violation of West Virginia's Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, *et seq.*

oo. **Wisconsin:** Defendant's practices were and are in violation of Wisconsin's Consumer Act, Wis. Stat. §421.101, *et seq.*

pp. **Wyoming:** Defendant's practices were and are in violation of Wyoming's Consumer Protection Act, Wyo. Stat. Ann. §40-12-101, *et seq.*

95.    Defendant violated the aforementioned states' unfair and deceptive acts and practices laws by representing that the Products are "Natural".

96.    Contrary to Defendant's representations, the Products are not "Natural".

97.     Defendant's misrepresentations were material to Plaintiff's and Class Members' decision to pay a premium for the Products.

98.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

99.     As a result of Defendant's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members paid a premium for the Products.

100.    As a result of Defendant's violations, Defendant has been unjustly enriched.

101.    Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

## SIXTH CAUSE OF ACTION
## COMMON LAW UNJUST ENRICHMENT
### (On Behalf of Plaintiff and All Class Members Against Defendant)

102.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

103.    Plaintiff, on behalf of herself and consumers nationwide, brings a common law claim for unjust enrichment.

104.    Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling its Products while misrepresenting and omitting material facts.

105.    Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling their Products at the expense of, and to the

39

detriment or impoverishment of, Plaintiff and Class Members, and to Defendant's benefit and enrichment.  Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

106.    Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the Products, which was not as Defendant represented them to be.

107.    Under New York's common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiff's and Class Members' overpayments.

108.    Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## SEVENTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION
### (On Behalf of Plaintiff and All Class Members Against Defendant)

109.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

110.    Defendant, directly, or through its agents and employees, made false representations, concealments, and non-disclosures to Plaintiff and Class Members about its Products' ingredients.

111.    In making these false, misleading, and deceptive representations and omissions, Defendant knew and intended that consumers would pay a premium for "Natural" labeled products over comparable products that are not labeled as being "Natural", furthering Defendant's private interest of increasing sales for its Products and decreasing sales of products that are truthfully offered as "Natural" by Defendant's competitors.

40

112.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive statements and representations, Defendant injured Plaintiff and Class Members in that they paid a premium price for the Products which were not as represented.

113.    In making the representations of fact to Plaintiff and Class Members described herein, Defendant has failed to fulfill its duties to disclose material facts about the Products. The failure to disclose the true nature of the Products' ingredients was caused by Defendant's negligence and carelessness.

114.    Defendant, in making these misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the misrepresentations were not true. Defendant made and intended the misrepresentations to induce the reliance of Plaintiff and Class Members.

115.    The Plaintiff and Class Members relied on these false representations and non-disclosures by Defendant when purchasing the Products, upon which reliance was justified and reasonably foreseeable.

116.    As a result of Defendant's wrongful conduct, Plaintiff and Class Members have suffered and continue to suffer economic losses and other general and specific damages, including amounts paid for the Products and any interest that would have been accrued on these monies, all in the amount to be determined at trial.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Article 9 of the CPLR;

41

(b) Entering preliminary and permanent injunctive relief against Defendant, directing

Defendant to correct their practices and to comply with New York law;

(c) Awarding monetary damages, excluding treble and/or punitive damages as being

consistent with New York State Class Action jurisprudence, pursuant to GBL § 349 and

GBL § 350;

(d) Awarding Plaintiff and Class Members their costs and expenses incurred in this action,

including reasonable allowance of fees for Plaintiff's attorneys and experts, and

reimbursement of Plaintiff's expenses; and

(e) Granting such other and further relief as the Court may deem just and proper.

Dated: August 31, 2016

THE SULTZER LAW GROUP P.C.

Jason P. Sultzer /s/

By: _____

Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

*Counsel for Plaintiff and the Class*

FILED: DUTCHESS COUNTY CLERK 08/31/2016 03:49 PM

NYSCEF DOC. NO. 3

INDEX NO. 2016-52186

RECEIVED NYSCEF: 08/31/2016

# ATTACHMENT A



**FEDERAL TRADE COMMISSION**
PROTECTING AMERICA'S CONSUMERS

# Four Companies Agree to Stop Falsely Promoting Their Personal-Care Products as "All Natural" or "100% Natural"; Fifth is Charged in Commission Complaint

## Products Contain Artificial Ingredients Such as Dimethicone and Phenoxyethanol

FOR RELEASE

April 12, 2016

**TAGS:** Bureau of Consumer Protection | Consumer Protection | Advertising and Marketing | Health Claims | Online Advertising and Marketing

Four companies that market skin care products, shampoos, and sunscreens online have agreed to settle Federal Trade Commission charges that they falsely claimed that their products are "all natural" or "100% natural," despite the fact that they contain synthetic ingredients. The Commission has issued a complaint against a fifth company for making similar claims.

Under the proposed settlements, each of the four companies is barred from making similar misrepresentations in the future and must have competent and reliable evidence to substantiate any ingredient-related, environmental, or health claims it makes.

"'All natural' or '100 percent natural' means just that -- no artificial ingredients or chemicals," said Jessica Rich, Director of the FTC's Bureau of Consumer Protection. "Companies should take a lesson from these cases."

According to the FTC, each of the following companies made the all-natural claim in online ads:

- Trans-India Products, Inc., doing business as ShiKai, based in Santa Rosa, California, markets "All Natural Hand and Body Lotion" and "All Natural Moisturizing Gel" both directly and through third-party websites including walgreens.com and vitacoast.com. The lotion contains Dimethicone, Ethyhexyl Glycerin, and Phenoxyethanol. The gel contains Phenoxyethanol.

- Erickson Marketing Group, doing business as Rocky Mountain Sunscreen, based in Aravada, Colorado, uses its website to promote "all natural" products such as the "Natural Face Stick," which contains Dimethicone, Polyethylene, and other synthetic ingredients.

- •

ABS Consumer Products, LLC, doing business as EDEN BodyWorks, based in Memphis, Tennessee, markets haircare products on its own websites and at Walmart.com. It makes "all natural" claims for products including "Coconut Shea All Natural Styling Elixer" and "Jojoba Monoi All Natural Shampoo." In reality, the products contain a range of synthetic ingredients such as Polyquaternium-37, Phenoxyethanol, Caprylyl Glycol, and Polyquaternium-7.

- Beyond Coastal, based in Salt Lake City, Utah, uses its website to sell its "Natural Sunscreen SPF 30," describing it as "100% natural." However, it also contains Dimethicone.

- California Naturel, Inc., located in Sausalito, California, sells supposedly "all natural sunscreen" on its website, though the product contains Dimethicone. The Commission has issued a complaint alleging that California Naturel has made deceptive "all natural" claims in violation of Sections 5 and 12 of the FTC Act.

The proposed consent orders bar the four settling respondents from misrepresenting the following when advertising, promoting, or selling a product: 1) whether the product is all natural or 100 percent natural; 2) the extent to which the product contains any natural or synthetic components; 3) the ingredients or composition of a product; and 4) the environmental or health benefits of a product.

The orders require the respondents to have and rely on competent and reliable evidence to support any product claims they make. Some claims require scientific evidence, which is defined as tests, analyses, research, or studies that have been conducted and evaluated objectively by qualified individuals using procedures generally accepted in the profession to yield accurate and reliable results.

The Commission's complaint against California Naturel seeks relief very similar to that found in the four proposed consent orders.

The Commission vote to issue each administrative complaint and to accept the four proposed consent agreements was 3-0. The FTC will publish a description of the consent agreement packages in the Federal Register shortly.

The agreements will be subject to public comment for 30 days, beginning today and continuing through May 12, 2016, after which the Commission will decide whether to make the proposed consent orders final. Interested parties can submit comments electronically by following the instructions in the "Invitation To Comment" part of the "Supplementary Information" section. Comments case can also be submitted by clicking on the following links: Trans-India Products, Inc.; Erickson Marketing Group; ABS Consumer Products, LLC; and Beyond Coastal.

**NOTE:** The Commission issues an administrative complaint when it has "reason to believe" that the law has been or is being violated, and it appears to the Commission that a proceeding is in the public interest. When the Commission issues a consent order on a final basis, it carries the force of law with respect to future actions. Each violation of such an order may result in a civil penalty of up to $16,000.

The Federal Trade Commission works to promote competition, and protect and educate consumers. You can learn more about consumer topics and file a consumer complaint online or by calling 1-877-FTC-HELP (382-4357). Like the FTC on Facebook, follow us on Twitter, read our blogs and subscribe to press releases for the latest FTC news and resources.

# Contact Information

**MEDIA CONTACT:**
Mitchell J. Katz
*Office of Public Affairs*
202-326-2161

**STAFF CONTACT:**
Robert Frisby
*Bureau of Consumer Protection*
202-326-2098



ftc.gov