**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Elizabeth Petrosino, individually on behalf
of herself and all others similarly situated,

        Plaintiff,

    v.

Stearn's Products, Inc. d/b/a Derma E®,

        Defendant.

Case No. 7:16-cv-07735-NSR

**Memorandum of Law in Opposition to Defendant's**
**Motion to Dismiss**

# TABLE OF CONTENTS

**I. PRELIMINARY STATEMENT** ........................................................................................... 1

**II. LEGAL ARGUMENTS** ................................................................................................... 2

    **A.** Plaintiff's Amended Complaint is Well-Pled and Facially Plausible ................................. 2

    **B.** Defendant asks the Court to Disregard "Reasonable Consumer" Jurisprudence ............... 2

    **C.** Plaintiff has Standing to Seek Injunctive Relief ................................................................ 3

    **D.** Plaintiff has Standing with Respect to Products that She did not Purchase ...................... 5

    **E.** What a Reasonable Consumer Believes about the term "Natural" is a Factual Dispute that Cannot be Decided on a Motion to Dismiss ............................................................................. 9

    **F.** Plaintiff's GBL § 349 Claim is Well-Pled ........................................................................ 11

    **G.** Plaintiff's GBL §350 Claim is Well-Pled ........................................................................ 13

    **H.** Plaintiff's Breach of Express Warranty Claim is Well-Pled ............................................ 14

    **I.** Plaintiff has Properly Sought Punitive Damages .............................................................. 18

**III. CONCLUSION** ............................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Coca-Cola Co.*,
2013 U.S. Dist. LEXIS 184232 (E.D.N.Y. July 17, 2013) ................................. 4, 13

*Addeo v. Metro. Bottling Co.*,
39 Misc. 2d 474 (N.Y. Sup. Ct. 1963) .................................................................. 16

*Altman v. Bayer Corp.*,
125 F. Supp. 2d 666 (S.D.N.Y. 2000) .................................................................. 11

*Anderson v. Jamba Juice Co.*,
888 F. Supp. 2d 1000 (N.D. Cal. 2012) ................................................................. 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................... 2

*Astiana v. Dreyer's Grand Ice Cream, Inc., Nos. C-11-2910 EMC, C-11-3161 EMC*,
2012 U.S. Dist. LEXIS 101371, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) .......... 6

*Atik v. Welch Foods, Inc.*,
No. 15-CV-5405 (MKB) (VMS), 2016 U.S. Dist. LEXIS 136056 (E.D.N.Y. Sept. 30, 2016)
..................................................................................................................... 6

*Ault v. J.M. Smucker Co.*,
No. 13 Civ. 3409, 2014 U.S. Dist. LEXIS 67118, 2014 WL 1998235, at *7 (S.D.N.Y. May 15, 2014) ........................................................................... 7, 11, 15, 16, 18

*Belfiore v. P&G*,
2015 U.S. Dist. LEXIS 38170 (E.D.N.Y. Mar. 20, 2015) ....................................... 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................... 2

*Brady v. Basic Research, L.L.C.*,
101 F. Supp. 3d 217 (E.D.N.Y. 2015) .................................................................... 6

*Brown v. Hain Celestial Group, Inc.*,
913 F. Supp. 2d 881 (N.D. Cal. 2012) .................................................................... 6

*Buonasera v. Honest Co.*,
No. 16 Civ. 1125 (VM), 2016 U.S. Dist. LEXIS 133846 (S.D.N.Y. Sept. 23, 2016) .......... 6, 8

*Cardenas v. NBTY, Inc.*,
870 F. Supp. 2d 984 (E.D. Cal. 2012) .................................................................... 7

*CBS, Inc. v. Ziff-Davis Pub. Co.*,
75 N.Y.2d 496, 554 N.Y.S.2d 449 (1990) ............................................................. 15

*Dimuro v. Clinique Labs., L.L.C.*,
 572 F. Appx. 27 (2d Cir. 2014) ........................................................................... 9

*Elias v. Ungar's Food Prods., Inc.*,
 252 F.R.D. 233 (D.N.J. 2008) ............................................................................ 7

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*,
 689 F. Supp. 2d 585 (S.D.N.Y. 2010) ............................................................... 15

*Fink v. Time Warner Cable*,
 810 F. Supp. 2d 633 (S.D.N.Y. 2011) ............................................................... 10

*Forcellati v. Hyland's, Inc.*,
 876 F. Supp. 2d 1155 (C.D. Cal. 2012) .............................................................. 6

*Gelb v. Am. Tel. & Tel. Co.* ,
 150 F.R.D. 76 (S.D.N.Y. 1993) ........................................................................... 5

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
 8 F. Supp. 3d 467 (S.D.N.Y. 2014) .................................................................... 6

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
 317 F.R.D. 374 (S.D.N.Y. 2016) ...................................................................... 6, 7

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
 2014 U.S. Dist. LEXIS 47180 (S.D.N.Y. Mar. 27, 2014) ................................. 2, 9

*Henderson Tire & Rubber Co. v. P.K. Wilson & Son, Inc.*,
 235 N.Y. 489 (1923) ......................................................................................... 17

*Hidalgo v. Johnson & Johnson Consumer Cos.*,
 148 F. Supp. 3d 285, No. 15-cv-5199 (SAS), 2015 WL 8375196 (S.D.N.Y. Dec. 8, 2015) ... 8

*Hishon v. King & Spalding*,
 467 U.S. 69 (1984) ........................................................................................ 2, 16

*Hubbard v. Gen. Motors Corp.*,
 No. 95-CV-4362, 1996 U.S. Dist. LEXIS 6974, 1996 WL 274018 (S.D.N.Y. May 22, 1996)
 ........................................................................................................................ 11

*In re Frito-Lay N. Am., Inc.*,
 2013 U.S. Dist. LEXIS 123824 (E.D.N.Y. Aug. 29, 2013) ....................... 3, 6, 8, 10

*JD&K Assocs., L.L.C. v. Selective Ins. Group, Inc.*,
 118 A.D.3d 1402, 988 N.Y.S.2d 749 (4th Dep't 2014) ....................................... 18

*Jou v. Kimberly-Clark Corp.*,
 2013 U.S. Dist. LEXIS 173216 (N.D. Cal. Dec. 10, 2013) ................................. 10

*Jovel v. I-Health, Inc.*,
 No. 12-CV-5614 (JG), 2013 U.S. Dist. LEXIS 139661 (E.D.N.Y. Sept. 27, 2013) ............... 6

*Kacocha v. Nestle Purina Petcare Co.*,
    No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097 (S.D.N.Y. Aug. 11, 2016) ........... 6

*Koch v. Greenberg*,
    14 F. Supp. 3d 247 (S.D.N.Y. 2014) ................................................................. 13

*Koehler v. Litehouse, Inc.*,
    2012 U.S. Dist. LEXIS 176971 (N.D. Cal. Dec. 13, 2012) ...................................... 5

*Mazzuocola v. Thunderbird Prods. Corp.*,
    1995 U.S. Dist. LEXIS 6883 (E.D.N.Y. May 16, 1995) ......................................... 15

*Mosely v. Vitalize Labs, L.L.C.*,
    No. 13 CV 2470 (RJD) (RLM), 2015 U.S. Dist. LEXIS 111857 (E.D.N.Y. Aug. 24, 2015) .. 6

*Moses v. Apple Hosp. REIT Inc.*,
    No. 14-CV-3131 (DLI)(SMG), 2016 U.S. Dist. LEXIS 136611 (E.D.N.Y. Sept. 30, 2016) .. 6

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,*
    693 F.3d 145 (2d Cir. 2012) ........................................................................... 9

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995) ............................................................ 3

*Panda Capital Corp. v. Kopo Int'l*,
    242 A.D.2d 690, 662 N.Y.S.2d 584 (2d Dep't 1997) ............................................ 17

*Pelayo v. Nestle USA, Inc.*,
    989 F. Supp. 2d 973 (C.D. Cal. 2013) ............................................................... 10

*Quinn v. Walgreen Co.*,
    958 F. Supp. 2d 533 (S.D.N.Y. 2013) ................................................................ 6

*Randy Knitwear, Inc. v. Am. Cyanamid Co.*,
    11 N.Y.2d 5 (1962) ............................................................................... 15, 16

*Reid v. GMC Skin Care USA Inc.*,
    No. 8:15-CV-277 (BKS/CFH), 2016 U.S. Dist. LEXIS 14001 (N.D.N.Y. Jan. 15, 2016) ...... 6

*Sci. Components Corp. v. Sirenza Microdevices, Inc.*,
    399 F. App'x 637 (2d Cir. 2010) ..................................................................... 11

*Segedie v. Hain Celestial Grp., Inc.*,
    2015 U.S. Dist. LEXIS 60739 (S.D.N.Y. May 7, 2015) .......................................... 10

*Segovia v. Vitamin Shoppe, Inc.*,
    No. 14-CV-7061 (NSR), 2016 U.S. Dist. LEXIS 15171 (S.D.N.Y. Feb. 5, 2016) ................. 6

*Silva v. Smucker Nat. Foods, Inc.*,
    2015 U.S. Dist. LEXIS 122186 (E.D.N.Y. Sept. 14, 2015) .................................. 9-10, 11, 18

*Silverstein v. R.H. Macy & Co.*,
    266 A.D. 5, 40 N.Y.S.2d 916 (1st Dep't 1943) ................................................................... 17

*Sitt v. Nature's Bounty, Inc.*,
    No. 15-CV-4199 (MKB), 2016 U.S. Dist. LEXIS 131564 (E.D.N.Y. Sept. 26, 2016) ......... 16

*Szymczak v. Nissan N. Am., Inc.*,
    2011 U.S. Dist. LEXIS 153011 (S.D.N.Y. Dec. 16, 2011) .................................................... 2

*Ural v. Encompass Ins. Co. of Am.*,
    97 A.D.3d 562, 948 N.Y.S.2d 621 (2d Dep't 2012) ............................................................ 18

*Weaver v. Chrysler Corp.*,
    172 F.R.D. 96 (S.D.N.Y. 1997) ................................................................................... 12, 13

*Weinstein v. Natalie Weinstein Design Assocs., Inc.*,
    86 A.D.3d 641, 28 N.Y.S.2d 305 (2d Dep't 2011) ............................................................. 19

*Weisblum v. Prophase Labs, Inc.*,
    88 F. Supp. 3d 283 (S.D.N.Y. 2015) .................................................................................. 6

*Williams v. Citigroup Inc.*,
    659 F.3d 208 (2d Cir. 2011) ............................................................................................ 20

*Wilner v. Allstate Ins. Co.*,
    71 A.D.3d 155, 893 N.Y.S.2d 208 (2d Dep't 2010) ........................................................... 19

*Woods v. Maytag Co.*,
    No. 10-CV-0559 (ADS)(WDW), 2010 U.S. Dist. LEXIS 116595 (E.D.N.Y. Nov. 2, 2010)  12

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................... 1, 2

Fed. R. Civ. P. 12(b)(6) ............................................................................ 1, 2, 10, 13, 14

**Statutes**

N.Y. Gen. Bus. Law § 349 ....................................................... 4, 11, 12, 13, 18, 19

N.Y. Gen. Bus. Law § 350 ..................................................................................... 13, 14

N.Y. U.C.C. Law § 2-313 ............................................................................................. 11

N.Y. U.C.C. Law § 2-607 ..................................................................................... 17,  18

**Other**

Note, *New York Creates a Private Right of Action to Combat Consumer Fraud: Caveat Venditor*,
    48 Brook. L. Rev. 509 (1982) ........................................................................................... 4

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, respectfully opposes Defendant's FRCP 12 (b) (6) and FRCP 12 (b) (1) motion to dismiss, and states the following:

## I.      Preliminary Statement

Stearn's Products, Inc. d/b/a Derma E exploits consumers' preference for cosmetic products over products that contain artificial or synthetic ingredients.  As set forth in the Amended Complaint, Defendant prominently and uniformly represents on its product labels and advertising that its products are "natural."  But, given that the products contain a multitude of synthetic ingredients,[1] the products are not "natural" and thus the on-label representations are false, deceptive, and misleading.

Despite "natural" being the centerpiece of Defendant's product marketing campaign, Defendant now advances the self-serving and disingenuous argument that "natural," which has consistently been deemed an actionable product warranty, is "mere puffery" akin to a boast about "blazing fast" internet service.  Moreover, Defendant asserts that no reasonable consumer should expect "natural" to mean natural.  Rather, according to the defendant—which peddles purportedly "natural" cosmetic products—consumers should expect "natural" to mean "bio-based," i.e. containing about 53% naturally derived ingredients.  Of course, "bio-based" does not appear on the label and is not the centerpiece of the Defendant's marketing campaign.[2]

---

[1] Including but not limited to: Cetyl Alcohol, Glyceryl Stearate, Tocopheryl Acetate, Polysorbate 20, Xanthan Gum, Dimethicone, Phenoxyethanol, Ethylexylglycerin, Potassium Sorbate, Zinc Oxide, Titanium Dioxide, Glyceryl Stearate Citrate, Glyceryl Stearate, Stearyl Alcohol, Cetearyl Alcohol, Decyl Glucoside, Coco-Glucoside, Cocamidopropyl Betaine, and Sodium Benzoate.
[2] Defendant also questions whether the synthetic ingredients are actually synthetic.  But, plaintiff's allegations in this regard are not conclusory.  Rather, Plaintiff includes detailed explanations and citations in support of her allegations that the ingredients are synthetic.  R. Doc. 19 ¶¶ 7-8.

As set forth in detail below, Defendant's motion must be denied in its entirety inasmuch as it is premised on arguments that have been consistently rejected by courts in the Second Circuit.

## II.     Legal Arguments

### A.  Plaintiff's Amended Complaint is Well-Pled and Facially Plausible.

A motion to dismiss enables the court "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Szymczak v. Nissan N. Am., Inc.*, 2011 U.S. Dist. LEXIS 153011, at *18 (S.D.N.Y. Dec. 16, 2011). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Hishon v. King*, 467 U.S. 69, 73 (1984). The claims must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, a plaintiff is obliged to buttress its claims with factual allegations that allow the court to draw the reasonable inference that defendant is liable for the conduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 (2009). The Supreme Court cautioned that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp.*, 550 U.S. at 556.

Here, each of Plaintiff's causes of action is well-pled and facially plausible and survives FRCP 12 (b) (6) and FRCP 12 (b) (1) scrutiny.

### B.  Defendant asks the Court to Disregard "Reasonable Consumer" Jurisprudence.

What a reasonable consumer believes and how a reasonable consumer acts cannot be resolved on a motion to dismiss as they are factual disputes. *Goldemberg v. Johnson & Johnson Consumer Cos.*, 2014 U.S. Dist. LEXIS 47180 (S.D.N.Y Mar. 27, 2014). Nevertheless, in support of its position that Ms. Petrosino and other consumers acted unreasonably when they purchased

Defendant's products based upon the belief that "natural" meant natural, Defendant has included an attorney affirmation with various exhibits, including self-serving trade group publications. Defendant asks the Court to review these exhibits and rule as a matter of law that "plaintiff's overly simplified, highly individualized and subjective definition of the term 'natural' depends on her own individual and idiosyncratic expectations for the Products which are objectively unreasonable." (Def.'s Memorandum of Law, page 14). Such a ruling would contravene well-settled Second Circuit jurisprudence. Indeed, in *In re Frito-Lay N. Am., Inc.*, No. 12-MD-2413 (RRM)(RLM), 2013 U.S. Dist. LEXIS 123824, *48 (E.D.N.Y. Aug. 29, 2013), where the court took judicial notice of various FTC and FDA materials and defendant's industry group publications, the court nevertheless ruled that what a reasonable consumer would believe the term "natural" to mean cannot be resolved on a motion to dismiss, "nor can the Court conclude that a reasonable consumer, or any consumer, is aware of and understands the various federal agencies' views on the term "natural." A similar conclusion is warranted here.

Parenthetically, while the "Natural Product Association" trade group literature (Defendant's Exhibit 4) seems to arbitrarily define "natural" as 95% natural, defendant's products nevertheless fail to even meet the NPA requirements because of, for instance, Defendant's use of Cocamidopropyl Betaine, which is a "prohibited" synthetic. (*See* R. Doc. 19 ¶¶ 7-8; Defendant's Exhibit 4, page 4).

### C.  Plaintiff has Standing to Seek Injunctive Relief

Defendants argue that Plaintiff lacks standing for injunctive relief. This is incorrect. As explained by the New York Court of Appeals in *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 24-25 623 N.Y.S.2d 529 (1995): (emphasis added)

> Section 349 (a) of the General Business Law declares as unlawful "[d]eceptive acts
> and practices in the conduct of any business, trade or commerce or in the furnishing

of any service in this state," with no further elaboration of the prohibited conduct. As enacted in 1970, the statute entrusted sole enforcement power to the Attorney-General. ***A decade later, the Legislature added a private right of action for "any person who has been injured by reason of any violation of this section," allowing injunctive relief and damages, as well as reasonable attorney's fees*** (General Business Law § 349 [h]; see also, Note, New York Creates a Private Right of Action to Combat Consumer Fraud: Caveat Venditor, 48 Brook L Rev 509).

As shown by its language and background, section 349 is directed at wrongs against the consuming public. General Business Law article 22-A, of which section 349 is a part, is entitled "Consumer Protection from Deceptive Acts and Practices." The structure of the law, with the Attorney-General initially wielding sole enforcement power in the name of the State, speaks to its public focus. Finally, the Governor's Memorandum approving the bill (L 1970, ch 43) lauds its consumer-protective purpose:

"Consumers have the right to "Consumers have the right to an honest market place where trust prevails between buyer and seller. The power to obtain injunctions against any and all deceptive and fraudulent practices will be an important new weapon in New York State's long standing efforts to protect people from consumer frauds" (Mem of Governor Rockefeller, 1970 NY Legis Ann, at 472).

Thereafter, in *Ackerman v. Coca-Cola Co*., 2013 U.S. Dist. LEXIS 184232, at *56 (E.D.N.Y. July 17, 2013), the court explained "courts have consistently held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer. To hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief." Here, a plain review of the Amended Complaint reveals that Plaintiff has set forth facts sufficient to support her allegations that Defendant's labeling and marketing is misleading to a reasonable consumer. (R. Doc. 19 ¶¶ 8-28).

Further, in *Belfiore v. P&G*, 2015 U.S. Dist. LEXIS 38170, at *7 (E.D.N.Y. Mar. 20, 2015), the court explained that if it were to deviate from the holding in *Ackerman* (relative to injunctive relief and standing), it would effectively "denigrate the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated." Accordingly, the court explained that "an injunction in connection with a class action is designed to afford protection of

future consumers from the same fraud. It does this by permitting the plaintiff to sue on their behalf. Given Plaintiff's dissatisfaction with (Defendant's product), it is unlikely he will re-purchase the product again. No information to the contrary has been provided. Based on the law as interpreted, he has standing." *See also*, *Koehler v. Litehouse, Inc.*, 2012 U.S. Dist. LEXIS 176971, at *6 (N.D. Cal. Dec. 13, 2012) (concluding that the plaintiff had standing to sue for injunctive relief even though he admitted he did not intend to make another purchase of the product in question because the product did not "boost immunity" as advertised); *see also Gelb v. Am. Tel. & Tel. Co.*, 150 F.R.D. 76, 77 n.3 (S.D.N.Y. 1993) ("The fact that Plaintiff is now an 'inactive' cardholder does not strip him of standing to sue nor does he fail to fulfill the 'typicality' or 'adequacy' requirements of Rule 23(a) for this reason. Clearly, Plaintiff alleges she was defrauded by defendants and that the fraudulent practices were ongoing at the time the Complaint was filed.").

In the instant matter, Plaintiff's allegations are that she was induced into purchasing Defendant's products based upon Plaintiff's false and misleading statements. Moreover, Plaintiff alleges that Defendants' practices are continuing. (R. Doc. 19 ¶ 47). Accordingly, Plaintiff has standing to seek injunctive relief.

### D. Plaintiff has Standing with Respect to Products that She did not Purchase.

Defendant argues that because the products' formulations are different, the unpurchased products are not "substantially similar" to the products Plaintiff purchased and so the Court can rule *at the motion to dismiss phase* that Plaintiff does not have standing to assert claims as to the unpurchased products. This argument is flawed. Moreover, Defendant's supporting case law undermines its position. This case falls squarely within the majority of New York district court

decisions holding that plaintiffs have Article III standing for unpurchased products, and that further analysis is appropriate during the class certification stage.[3]

In support of its argument, Defendant cites to this Court's class certification ruling in *Goldemberg v. Johnson & Johnson Consumer Cos*. 317 F.R.D. 374 (S.D.N.Y. 2016). But, Defendant fails to acknowledge, or perhaps fails to recognize, that the Court evaluated "substantial similarity" very differently at the motion to dismiss phase than it did at the certification stage. Critically, in response to Defendant's motion to dismiss, the court held "Defendant's argument that Plaintiff lacks standing to represent a class including persons who purchased Aveeno Active Naturals products which he did not purchase is properly considered at the class certification stage." *Goldemberg v. Johnson & Johnson Consumer Cos*., 8 F. Supp. 3d 467, 484 (S.D.N.Y. 2014).[4]

---

[3] *See* Weisblum v. Prophase Labs, Inc., 88 F. Supp. 3d 283, 291 (S.D.N.Y. 2015) ("The Circuit has held, however, that Article III standing is satisfied for each named defendant as long as there is "at least one named plaintiff who can assert a claim directly against that defendant." Because there is no dispute that that standard is met here, Plaintiffs' claims on behalf of purchasers of other [unpurchased] products can move forward.") (citations omitted); *E.g., Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 542 (S.D.N.Y. 2013); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 484 (S.D.N.Y. 2014); *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 228 (E.D.N.Y. 2015); *In re Frito-Lay N. Am., Inc.*, No. 12-MD-2413 (RRM)(RLM), 2013 U.S. Dist. LEXIS 123824, *42 (E.D.N.Y. Aug. 29, 2013); *Jovel v. I-Health, Inc.*, No. 12-CV-5614 (JG), 2013 U.S. Dist. LEXIS 139661, *30 (E.D.N.Y. Sept. 27, 2013); *Mosely v. Vitalize Labs, LLC*, No. 13 CV 2470 (RJD) (RLM), 2015 U.S. Dist. LEXIS 111857, *18-19 (E.D.N.Y. Aug. 24, 2015); *Reid v. GMC Skin Care USA Inc.*, No. 8:15-CV-277 (BKS/CFH), 2016 U.S. Dist. LEXIS 14001, *12-14 (N.D.N.Y. Jan. 15, 2016); *Segovia v. Vitamin Shoppe, Inc.*, No. 14-CV-7061 (NSR), 2016 U.S. Dist. LEXIS 15171, *9 (S.D.N.Y. Feb. 5, 2016); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, *23-24 (S.D.N.Y. Aug. 11, 2016); *Buonasera v. Honest Co.*, No. 16 Civ. 1125 (VM), 2016 U.S. Dist. LEXIS 133846, *15 (S.D.N.Y. Sep. 23, 2016); *Moses v. Apple Hosp. REIT Inc.*, No. 14-CV-3131 (DLI)(SMG), 2016 U.S. Dist. LEXIS 136611, *10 (E.D.N.Y. Sep. 30, 2016); *Atik v. Welch Foods, Inc.*, No. 15-CV-5405 (MKB) (VMS), 2016 U.S. Dist. LEXIS 136056, *23 (E.D.N.Y. Sep. 30, 2016).

[4] Citing *Quinn v. Walgreen Co*., 958 F. Supp. 2d 533, 541-42 (S.D.N.Y. 2013); *Brown v. Hain Celestial Grp. Inc*., 913 F. Supp. 2d 881, 889-92 (N.D. Cal. 2012)); *Anderson v. Jamba Juice Co*., 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012); *Astiana v. Dreyer's Grand Ice Cream, Inc*., Nos. C-11-2910 EMC, C-11-3161 EMC, 2012 U.S. Dist. LEXIS 101371, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012); *Forcellati v. Hyland's, Inc*., 876 F. Supp. 2d 1155, 1161 (C.D.

Thereafter, at the class certification stage, this Court held that "because Plaintiffs cannot demonstrate that the claims involving their 18 products are the same in *all essential respects* to the claims absent members would have for the other 72 products (the questions of proof are product specific) each Named Plaintiff only has standing on behalf of others with regard to products they actually purchased." *Goldemberg v. Johnson & Johnson Consumer Cos.,* 317 F.R.D. 374, 391 (S.D.N.Y. 2016). The Court ostensibly made this ruling in response to Defendant's argument that "the challenged misrepresentations appeared in a variety of ways across the various products, often accompanied by explanatory or contextualizing language, creating a substantial divergence in the evidence required to prove each plaintiff's claim." And, the Court ostensibly made this ruling because Defendants demonstrated that, among other things, plaintiff Annie Le's deposition testimony revealed she did not understand "Active Naturals" to have a common meaning across all Products, and "couldn't compare one [product] to another" because they are "all different products" containing different ingredients. Id. Needless to say, depositions have not taken place in the case at bar and Defendant cannot show, as it must, that Plaintiff understands "natural" to mean different things within the context of different products sold by Defendant.

Accordingly, the Court can rule that, as a matter of law, and consistent with the *Goldemberg* cases, it is premature at this pre-discovery, motion to dismiss stage to find Plaintiff lacks standing to assert claims for the products she did not purchase. *See also Ault v. J.M. Smucker Co.,* No. 13 Civ. 3409, 2014 U.S. Dist. LEXIS 67118, 2014 WL 1998235, at *7 (S.D.N.Y. May 15, 2014) ("Whether the plaintiffs' injuries are sufficiently similar to those of the putative class members who purchased other products - and whether plaintiffs will therefore adequately represent

Cal. 2012); *Cardenas v. NBTY, Inc*., 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012); *Elias v. Ungar's Food Prods. Inc*., 252 F.R.D. 233, 243 (D.N.J. 2008)).

the interests of the class - is a question the Court will consider on a Rule 23 certification motion.") (internal quotation marks omitted*); see also, e.g., Hidalgo v. Johnson & Johnson Consumer Companies, Inc.,* 148 F. Supp. 3d 285, 2015 WL 8375196, at *3 (S.D.N.Y. 2015) ("Further, Article III standing is a separate issue from that of 'class standing'. . . Thus, 'for every named defendant there must be at least one named plaintiff who can [*13] assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis.'"); *In re Frito-Lay N. Am., Inc. All Nat. Litig.,* 2013 U.S. Dist. LEXIS 123824, 2013 WL 4647512, at *12 ("*NECA-IBEW* thus instructs that, because plaintiffs have satisfied the Article III standing inquiry, their ability to represent putative class members who purchased products plaintiffs have not themselves purchased is a question for a class certification motion.").

Defendant also cites to *Dimuro v. Clinique Labs., LLC,* 572 F. Appx. 27 (2d Cir. 2014), where the 2nd Circuit explained that the cosmetic users' class action complaint arising from a cosmetic company's marketing of a particular product line was properly dismissed with prejudice as to the four products that the users had not bought because each product had different ingredients *and* different advertising claims. In stark contrast to the facts in *Dimuro*, in the case at bar, Defendant only argues that the products had different formulations or ingredients. They do not argue -- nor can they -- that qualitatively different advertising claims were made in connection with the different products. This is because, as the Amended Complaint plainly shows, the advertising claim at issue is the word "Natural"– notwithstanding the existence of synthetics in each of the products. Thus Plaintiff has standing at this stage for all products listed in the Amended Complaint. This reasoning is supported by, for instance, *Buonasera v. Honest Co.,* 2016 U.S. Dist. LEXIS 133846 (S.D.N.Y. Sep. 23, 2016), which evaluated plaintiff's class action complaint in view of *Dimuro,* and explained:

First, Buonasera has alleged injury by his purchase of the two hair care products that were allegedly misrepresented. Regarding the second requirement, "the nature and content of the specific misrepresentation alleged," *NECA-IBEW Health & Welfare Fund,* 693 F.3d at 162, is similar with respect to the unpurchased products in that Buonasera alleges that these products were also labeled as "all natural," "natural," "plant-based," and contain "no harsh chemicals." Although the unpurchased products may contain different ingredients compared to the purchased products, *see, e.g., DiMuro, 572 F. App'x at 29,* the Court finds that the Amended Complaint adequately alleges that the misrepresentation claimed with respect to the unpurchased products is sufficiently similar to the misrepresentation for the purchased products. Therefore, at this stage of the litigation, the Court finds that Buonasera does have standing to seek relief for products he did not purchase and denies Honest's Motion on this basis. Id. at *15 (S.D.N.Y. Sep. 23, 2016).

Accordingly, Defendant's standing argument must be rejected.

### E. What a Reasonable Consumer Believes about the term "Natural" is a Factual Dispute that Cannot be Decided on a Motion to Dismiss.

Defendant devotes the bulk of its memorandum of law to citing inapposite cases outside the Second Circuit in support of its meritless argument that the Court can rule as a matter of law that: a) no reasonable consumer could be misled into believing that the product is "all natural or 100% natural;" and b) natural is a "non-actionable subjective statement." Identical arguments have been consistently rejected by this Court and other courts within the Second Circuit.

In *Goldemberg v. Johnson & Johnson Consumer Cos*., 2014 U.S. Dist. LEXIS 47180 (S.D.N.Y Mar. 27, 2014), Mr. Goldemberg alleged that the trademarked term "Active Naturals" was deceptive because it conveyed to consumers that the product was "completely natural," yet the products at issue contained synthetic ingredients. Johnson & Johnson argued that the plain language of the phrase "Active Naturals" conveys to consumers that the products contain active, natural ingredients — not that they are "100% Natural" and contain no synthetic ingredients. This Court rejected Defendant's argument and declared "[we] cannot find as a matter of law that no reasonable consumer could be misled by these advertisements into believing the products contain exclusively natural ingredients." *Id*. at * 27. Further, in *Silva v. Smucker Natural Foods, Inc*., 2015

U.S. Dist. LEXIS 122186 (E.D.N.Y. Sept. 14, 2015), the court rejected Defendant's argument that, as a matter of law, no reasonable consumer could be similarly misled by "Natural" into thinking that the products were exclusively natural. And, in *In re Frito-Lay N. Am., Inc*., 2013 U.S. Dist. LEXIS 123824, (E.D.N.Y. Aug. 29, 2013), the court held that "what a reasonable consumer would believe the term 'natural' to mean on a label cannot be resolved on [a] motion [to dismiss]" as it is a "factual dispute." Id. at * 48- 49. Similarly, in the case at bar, there is no basis for ruling on a motion to dismiss that consumers could not be misled into believing that "Natural" prominently displayed on the Defendant's products means that the products are all natural or do not contain artificial ingredients.

Defendant disregards these cases and relies on *Pelayo v Nestle USA, Inc*. 989 F. Supp. 2d 973 (C.D. Cal. 2013), an outlier case within the 9th Circuit that has been rejected by district courts in the 2nd Circuit and throughout the country. *See e.g. Jou v. Kimberly-Clark Corp*., 2013 U.S. Dist. LEXIS 173216, *31-32 (N.D. Cal. Dec. 10, 2013) (Holding that *Pelayo* "is at odds with basic logic, contradicts the FTC statement on which it relies, and appears in conflict with the holdings of many other courts, including the Ninth Circuit. This Court accordingly declines to follow *Pelayo's*, holding.") *See also Segedie v. Hain Celestial Grp., Inc*., 2015 U.S. Dist. LEXIS 60739 (S.D.N.Y. May 7, 2015) (Distinguishing *Pelayo* and holding that "it is enough that Plaintiffs allege that 'natural' communicates the absence of synthetic ingredients. Ultimately, the question is one of reasonableness, which cannot be resolved on a Rule 12(b) (6) motion.").

Defendant also argues the Court should rule, as a matter of law, that "natural" is mere puffery akin to "blazing fast" internet service -- which was deemed puffery in *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633 (S.D.N.Y. 2011). This argument flies in the face of Second Circuit jurisprudence. Far from non-actionable puffery, "natural" has consistently been treated as an

actionable warranty. For instance, in *Ault v J.M Smucker Co*., 2014 U.S. Dist. LEXIS 67118 (SDNY May 15, 2014), the court held that a representation relative to whether a product is "natural" constitutes "an actionable warranty." *Id*. at *20-21. And, in *Silva v. Smucker Natural Foods, Inc*., 2015 U.S. Dist. LEXIS 122186, *26-27 (E.D.N.Y. Sept. 14, 2015), where the court was asked to determine whether "natural" in "Natural Brew" constituted an express warranty, the court explained:

> Under Section 2-313(1) of the New York Uniform Commercial Code, a seller creates an express warranty by making "[a]ny affirmation of fact or promise . . . to the buyer which relates to the goods and becomes part of the basis of the bargain." N.Y. U.C.C. § 2-313(1)(a). Moreover, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." N.Y. U.C.C. § 2-313(1)(b); *see also Scientific Components Corp. v. Sirenza Microdevices, Inc.*, 399 F. App'x 637, 639 (2d Cir. 2010). Generalized statements by the defendant, however, do not support an express warranty claim if they are "such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely." *Hubbard v. General Motors Corp.*, No. 95-CV-4362, 1996 U.S. Dist. LEXIS 6974, 1996 WL 274018, at *6 (S.D.N.Y. May 22, 1996) (internal quotations omitted). What a reasonable consumer's interpretation of a seller's representation might be is generally an issue of fact that is not appropriate for decision on a motion to dismiss. *See Ault*, 2014 U.S. Dist. LEXIS 67118, 2014 WL 1998235, at *6. I cannot say as a matter of law at this early stage of the case that a reasonable consumer could not interpret Smucker's representations to be a factual claim about Natural Brew's ingredients.

Accordingly, Defendant's consumer protection claims are well-pled and must survive motion to dismiss scrutiny.

### F. Plaintiff's GBL § 349 Claim is Well-Pled.

To state a cause of action under NY GBL §349, a plaintiff must plead that (1) the defendant's conduct was consumer-oriented; (2) the defendant engaged in a materially deceptive and misleading act; and (3) plaintiff was injured by the defendant's act. *Altman v. Bayer Corp*., 125 F. Supp. 2d 666, 673 (S.D.N.Y. 2000). Plaintiff has satisfied this pleadings requirement.

Defendant argues, however, that Plaintiff has not alleged deceptive acts or practices. In support of this meritless argument, Defendant cites: *Woods v. Maytag Co.,* No. 10-CV-0559 (ADS)(WDW), 2010 U.S. Dist. LEXIS 116595 (E.D.N.Y. Nov. 2, 2010) and *Weaver v. Chrysler Corp.,* 172 F.R.D. 96 (S.D.N.Y. 1997).

In *Woods,* where plaintiff's oven exploded, plaintiff attributed the explosion to a latent defect in the igniter mechanism and alleged that in contravention of GBL §349, defendant knowingly misrepresented material facts regarding the safety and use of the oven in an effort to induce plaintiffs to purchase the oven. The court dismissed the §349 claim and explained that plaintiff "has simply not provided enough factual information to plausibly suggest that [defendant] had knowledge of the defect or made misrepresentations to induce purchase of the ovens." The court noted that plaintiff could not identify the alleged misrepresentations. Moreover, the court explained "when a defendant exclusively possesses information that a reasonable consumer would want to know and could not discover without difficulty, failure to disclose can constitute a deceptive or misleading practice. However, the plausibility of the scheme is crucial to pleading a cause of action under GBL § 349…" Id at *43-44. In stark contrast to *Woods*, in the case at bar, Plaintiff has clearly identified -- and even depicted -- the misrepresentation, i.e., "natural." And, there is simply nothing implausible about the assertion that Defendant knew its "natural" claim was false. Simply put, alleging that Defendant was aware that its products contained the synthetics, Phenoxyethanol, Ethylexylglycerin, and Dimethicone (all of which are included on the back-label, ingredient panel), is not akin to alleging that a defendant knew its products had a propensity to explode but actively concealed it from the public.

And, in *Weaver*, the court dismissed plaintiff's complaint because he failed to adequately describe how an integrated child safety belt was defective, how the defect manifested, and how there was any deception. Here, Plaintiff's Amended Complaint explicitly indicates, *inter alia*:

- Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as being "Natural" —is misleading in a material way in that it, *inter alia*, induced Plaintiff and Class Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have.

- Plaintiff and the Class Members have been injured inasmuch as they paid a premium for products that were—contrary to Defendant's representations—not "Natural." Accordingly, Plaintiff and the Class Members received less than what they bargained and/or paid for.

- Defendant's advertising and product packaging and labeling induced the Plaintiff and Class Members to buy Defendant's Products and to pay a premium price for them.

Accordingly, Plaintiff's GBL §349 claim is well pled and must survive FRCP R. 12(b)(6) scrutiny.

### G.  Plaintiff's GBL §350 Claim is Well-Pled.[5]

To state a cause of action under NY GBL §350, a plaintiff must plead that an advertisement (1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury.  *Ackerman v. Coca-Cola Co*., 2013 U.S. Dist. LEXIS 184232, * 8-10 (E.D.N.Y. July 17, 2013).   A plain reading of the Amended Complaint reveals that each of these elements has been well-pled.  (R Doc. 19 ¶¶  63-85).

Defendant argues that pleading reliance with specificity is necessary to maintain this claim. This is incorrect.  *See Koch v. Greenberg,* 14 F. Supp. 3d 247 (S.D.N.Y. 2014) ("Moreover, while a plaintiff must have suffered harm to bring a successful GBL §§ 349 or 350 claim, he need not

---

[5] Plaintiff stipulates that the GBL 350 and GBL 350-a(1) claims should be combined.

show justifiable reliance such as that which is required for fraud.") But, even if reliance is required, a plain review of Plaintiff's Amended complaint reveals that it has been pled plausibly and with specificity. For instance, the Amended Complaint includes, *inter alia*, the following averments:

- Defendant's representations that the Products are "Natural" induced consumers, including Plaintiff and Class Members, to pay a premium to purchase the Products. Plaintiff and Class Members relied on Defendant's false and misleading misrepresentations in purchasing the Products at a premium price above comparable alternatives that are not represented to be "Natural." If not for Defendant's misrepresentations, Plaintiff and Class Members would not have been willing to purchase the Products at a premium price. Accordingly, they have suffered an injury as a result of Defendant's misrepresentations. (R. Doc. 19 ¶ 18).

- Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions. (R. Doc. 19 ¶ 20).

- Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as being "Natural" —is misleading in a material way in that it, *inter alia*, induced Plaintiff and Class Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have. (R. Doc. 19 ¶ 55).

- Defendant's advertising and product packaging and labeling induced the Plaintiff and Class Members to buy Defendant's Products and to pay a premium price for them. (R. Doc. 19 ¶ 58).

Accordingly, Plaintiff's GBL §350 claim is well pled and must survive FRCP R. 12(b)(6) scrutiny.

### H. Plaintiff's Breach of Express Warranty Claim is Well-Pled.

Defendant argues that the breach of express warranty claim must be dismissed because: a) Plaintiff is not in privity with defendant, or alternatively, Plaintiff's on-label representations do not constitute a form of public advertising; b) Plaintiff has not adequately alleged pre-suit notice; and, c) "natural" is not an actionable warranty. These arguments are frivolous.

First, "a prima facie claim for breach of express warranty requires the plaintiff to show that there was an affirmation of fact or promise by the seller, the natural tendency of which was to

induce the buyer to purchase and that the warranty was relied upon to the plaintiff's detriment." *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F.Supp.2d 585, 604 (S.D.N.Y. 2010) (citation omitted). Here, it is alleged in the Amended Complaint that (a) Defendant held out to consumers that its products were natural when, in fact, they contained synthetic ingredients b) Plaintiff relied on Defendant's promises in deciding to purchase the products at a premium; and (c) Defendants' promises were false.[6]

In *Ault v J.M Smucker Co.*, 2014 U.S. Dist. LEXIS 67118 (SDNY May 15, 2014), the court held that "privity between Plaintiff and Defendant is not required." Rather, "a buyer may bring a claim against a manufacturer from whom he did not purchase a product directly, since an express warranty may include specific representations made by a manufacturer in its sales brochures or advertisements." *Id.* at *20-21. In sum, Defendant's warranty runs with its packaging. And, as noted in *CBS v. Ziff-Davis Publ. Co.*, 75 N.Y.2d 496, 503, 554 N.Y.S.2d 449 (1990), "[t]he critical question," in express warranty actions, "is not whether the buyer believed in the truth of the warranted information, … but whether [he] believed [he] was purchasing the seller's promise as to its truth." While contractual in nature, express warranties do not always require a direct contract. "It may once have been true that the warranty which really induced the sale was normally an actual term of the contract of sale. Today, however, the significant warranty, the one which effectively induces the purchase, *is frequently that given by the manufacturer through mass advertising and labeling to ultimate … consumers with whom he has no direct contractual relationship*." *Randy Knitwear, Inc. v. Am. Cyanamid Co.*, 11 N.Y.2d 5, 12 (1962) (emphasis added). As in *Randy*

---

[6] "In any event, whether Defendants made statements which constitute an express warranty involves a question of fact. See *Mazzuocola v. Thunderbird Prods. Corp.*, 1995 U.S. Dist. LEXIS 6883 (E.D.N.Y. May 16, 1995) (the question of whether warranties were express warranties should be submitted to the jury).Thus, any questions that remain are factual issues which the Court cannot resolve on a motion to dismiss.

*Knitwear*, and in *Ault v. J.M. Smucker*, and in the case at bar, there was an express warranty by virtue of the product labeling and marketing: "The world of merchandising is, in brief, no longer a world of direct contract; it is, rather, a world of advertising and, when representations expressed and disseminated in the mass communications media and on labels (attached to the goods themselves) prove false and the user or consumer is damaged by reason of his reliance on those representations, it is difficult to justify the manufacturer's denial of liability on the sole ground of the absence of technical privity." *Randy Knitwear,* 11 N.Y.2d at 12 (1962). Summarizing the *Randy Knitwear* opinion, the court in *Addeo v. Metro. Bottling Co.*, 39 Misc. 2d 474, 475 (Appellate Term, 1st Dep't 1963), explained "the Court of Appeals took a giant step in the case of *Randy Knitwear* []. The traditional privity limitation was dispensed with in an action for breach of express warranty by a remote purchaser against a manufacturer who induced the purchase by representing the quality of the goods in public advertising *and on labels* which accompanied the goods." (emphasis added). And, as explained in *Sitt v. Nature's Bounty, Inc.,* No. 15-CV-4199 (MKB), 2016 U.S. Dist. LEXIS 131564, at * 52 (E.D.N.Y. Sep. 26, 2016) "the New York Court of Appeals has dispensed with the requirement of privity in cases involving breach of an express warranty where only economic damages are alleged."

Second, with respect to Defendant's pre-suit notice argument, Plaintiff alleges that "within a reasonable time after they knew or should have known of Defendant's breach, Plaintiff, on behalf of herself and Class Members, placed Defendant on notice of its breach, giving Defendant an opportunity to cure their breach, which they refused to do." (R. Doc. 19 ¶ 91). This is a well-pled allegation and must be accepted as true for purposes of the motion to dismiss. *Hishon v. King*, 467 U.S. 69, 73 (1984). But even if *arguendo*, Plaintiff's allegation is insufficiently detailed, under New York law, it is not an element of the cause of action for breach of express warranty that notice

of breach be given prior to the institution of suit.  And, in any event New York cases that have addressed the issue both before and after the adoption of the UCC, hold that a lawsuit itself may constitute the timely notice of a breach of warranty. (The relevant language of UCC § 2-607 is set forth in the margin.[7]).

In the pre-UCC case of *Silverstein v. R.H. Macy & Co.*, 266 App.Div. 5, 40 N.Y.S.2d 916 (1st Dep't 1943), the plaintiff purchased a chin-up bar from Macy's, which made representations that it was safe, and could be installed in a doorframe without fasteners, but instead locked into place using pressure, by rotating the bar and thereby expanding it into the doorframe. The plaintiff was injured when the bar came loose, causing him to fall. He brought suit alleging solely breach of warranty, in that the chin-up bar was represented as safe. Defendant Macy's argued that prior to his filing suit, the plaintiff failed to give it notice of the breach. To this, the First Department stated, "the commencement of this action would seem to afford sufficient notice of breach of warranty. (*Henderson Tire & Rubber Co. v. Wilson & Son*, 235 N. Y. 489, 500.)" 266 App.Div. at 9.[8]  Moreover, in *Panda Capital Corp. v. Kopo Int'l, Inc.*, 242 A.D.2d 690, 662 N.Y.S.2d 584 (2d

---

[7] UCC § 2-607 (3) provides: "Where a tender has been accepted . . . (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."

[8] In the *Henderson* case, decided in 1923, the Court of Appeals stated: "There was no necessity for the plaintiff to give notice under section 146 of the Personal Property Law. But if it be assumed that such notice were required, it gave all the notice that was necessary when it commenced this action within a very short time after the defendants had taken the position that they would not perform. The law does not require something to be done for the mere form of it, since it looks to substance. If a notice were to be given, it was for a purpose. No purpose could here have been served because defendants had announced they would give no further specifications and accept no further deliveries. Under such circumstances what could possibly have been accomplished by giving a notice, assuming that one were required? (Citation omitted). When a notice is required to be given, it is for the purpose of enabling the person to whom given to act." In light of this, plaintiff notes that defendant has failed to argue that it would have changed its packaging and marketing if only it had received notice prior to institution of suit that it was in breach.

Dep't 1997), the defendant agreed to deliver steel products to the plaintiff, who brought suit alleging various breaches. The defendant argued that it had not received timely notice of the alleged breaches, as required by UCC § 2-607. To this, the Second Department stated:

> This argument overlooks the fact that the complaint and subsequent amended complaint in this action themselves constituted such notice, and that the plaintiff had repeatedly made its objections to Kopo's pattern of deficient performance known prior to the shipments reflected in the invoices. Under these circumstances, it is at the very least an issue of fact as to whether reasonably timely notice of breach was given (citations omitted).

Third, with respect to Defendant's actionable warranty argument, as set forth in greater detail above, it is well-settled that "natural" is an actionable warranty. *See Ault v J.M Smucker Co.*, 2014 U.S. Dist. LEXIS 67118 (SDNY May 15, 2014), (holding that a representation relative to whether a product is "natural" constitutes "an actionable warranty.") *See Silva v. Smucker Natural Foods, Inc.*, 2015 U.S. Dist. LEXIS 122186, *26-27 (E.D.N.Y. Sept. 14, 2015), ("natural" in "Natural Brew" constituted an express warranty).

Accordingly, Plaintiff's express warranty claims must be sustained.

**I. Plaintiff has Properly Sought Punitive Damages.**

Plaintiff has sufficiently alleged a claim for punitive damages stemming from Defendant's willful, wanton and reckless violations of GBL § 349. (R Doc. 19 ¶¶ 56, 69, 79, 101.) "[A] claim for punitive damages may be asserted in the context of a cause of action predicated upon an alleged violation of General Business Law § 349." *Ural v Encompass Ins. Co.*, 97 A.D.3d 562, 565, 948 N.Y.S.2d 621 (2d Dep't 2012); *JD&K Associates v. Selective Insurance Group*, 118 A.D.3d 1402, 988 N.Y.S.2d 749 (4th Dep't 2014).

It is erroneous to dismiss punitive damages claims that stem from allegations of deceptive acts and practices in violation of GBL § 349 that involve conduct that transcends mere

carelessness. *Weinstein v. Natalie Weinstein Design Assocs.*, 86 A.D.3d 641, 644, 28 N.Y.S.2d 305 (2d Dep't 2011). As stated in *Weinstein*:

> The plaintiffs' ninth cause of action asserted against Natalie and Design Associates seeks to recover punitive damages. … [W]ith respect to Design Associates, to the extent the plaintiffs' punitive damages claim stems from the allegations of deceptive trade practices and false advertising, "such conduct may be considered to be so flagrant as to transcend mere carelessness" (*Wilner v Allstate Ins. Co.*, 71 A.D.3d 155, 167 [893 N.Y.S.2d 208 (2d Dep't 2010)]). As such, the punitive damages claim should not have been dismissed insofar as asserted against Design Associates.

Thus, as noted in *Weinstein* (citing *Wilner*), a punitive damages award is warranted where, as is alleged in the case at bar, defendant's conduct evinces willful or wanton negligence or recklessness or a high degree of moral culpability. *Wilner v. Allstate Ins. Co.*, 71 A.D.3d 155, 167, 893 N.Y.S.2d 208 (2d Dep't 2010).

Plaintiff sufficiently alleged that Defendant wantonly and recklessly engaged in deceptive acts and practices in violation of, *inter alia*, GBL § 349. (R Doc. 19 ¶¶ 56, 69, 79, and 101). The defendant has willfully and deceptively marketed its products as "natural" when, in fact, the products contain synthetic ingredients. Furthermore, Defendant did this intentionally so that users would pay a premium, for its products, as compared to comparable products that are not held out as being "natural." Plaintiff clearly alleged that Defendant was more than willing to mislead consumers in order to increase its bottom line. Accordingly, Plaintiff has sufficiently alleged claims for punitive damages pursuant to GBL § 349, and Defendant's motion to dismiss Plaintiff's claim therefor must be denied.

## III.    Conclusion

For the reasons set forth above, Plaintiff, individually and on behalf of others similarly situated, respectfully requests that the Court deny Defendant's motion to dismiss. In the event, however, that the Court finds any deficiency in the Amended Complaint, it is respectfully

submitted that leave to replead must be granted, in accordance with *Williams v. Citigroup Inc.*, 659 F. 3d 208 (2d Cir. 2011).

Dated: February 6, 2017            Respectfully submitted,


**THE SULTZER LAW GROUP PC**

**Joseph Lipari /s/**

Jason P. Sultzer
*sultzerj@thesultzerlawgroup.com*
Joseph Lipari
*liparij@thesultzerlawgroup.com*
THE SULTZER LAW GROUP
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Tel: 845-483-7100
Fax: (888) 749-7747


**HALUNEN LAW**
Melissa W. Wolchansky
*wolchansky@halunenlaw.com*
Amy E. Boyle
*boyle@halunenlaw.com*
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099

*Attorneys for Plaintiff*