UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELIZABETH PETROSINO, *individually on behalf of
herself and others similarly situated*

                  Plaintiff,

-against-

STEARN'S PRODUCTS, INC. D/B/A DERA E®,

                  Defendants.

No. 16-cv-7735 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Elizabeth Petrosino, on behalf of herself and others similarly situated, commenced this action against Stearn's Products, Inc., D/B/A Dera E®. (*See* Amended Compl., ECF No. 19.) Plaintiff brings claims sounding in: (1) violation of New York General Business Law § 349; (2) violation of New York General Business Law § 350; (3) breach of express warranty; (4) violation of state consumer protection statutes; and (5) injunctive relief. Before the Court are Defendant's Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), and Defendant's Motion to Stay the case pursuant to the primary jurisdiction doctrine. For the following reasons, Defendant's Motion to Dismiss is GRANTED in part and DENIED in part with leave to amend. The Motion to Stay is DENIED in its entirety.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 3/30/2018

1

## BACKGROUND

Plaintiff commenced this putative class action suit on August 31, 2016, in the Supreme Court of the State of New York, County of Dutchess, (Notice of Removal, Exh. A, Complaint, ECF No. 1) claiming that Defendant allegedly uses deceptive and misleading labeling on their cosmetic products. (Amended Compl. ("Compl.") ¶ 1, ECF No. 19.) Defendant removed this action on October 3, 2016 pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (Notice of Removal ¶ 2.)[1] On December 1, 2016, Plaintiff filed an Amended Complaint seeking injunctive relief, punitive damages and claiming violations of New York General Business Law ("GBL") §§ 349 and 350, breach of express warranty, and violations of the consumer protection statues of all fifty states.[2]

Defendant Stearn's Products, Inc. ("Stearn's"), produces and markets a line of cosmetic products throughout the United States. (*Id.* ¶ 6.) The packaging and labels of the cosmetics bear a mark with the word "natural" surrounded by the phrases "cruelty free," "paraben-free" and "100% vegan." (*Id.* ¶ 6.) The word "natural", Plaintiff asserts, appears "in a prominent location" on the labels and packages of all the products. (*See id.* ¶19.) Plaintiff purchased three of Defendant's products in New York: (1) Defendant's Derma-e Anti-Wrinkle Vitamin A Retinyl

---

[1] Removal is proper under 28 U.S.C. § 1332(d) (2)(A) when: "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which— (A) any member of a class of plaintiffs is a citizen of a State different from any defendant." In this case, the named Plaintiff is a citizen of New York and Defendant Stearn's Products, Inc. ("Stearn's") is a corporation organized and existing under the laws of the state of California, with its principal place of business in Simi Valley, California. (Notice of Removal ¶ 12–13.) Plaintiff alleges that the amount in controversy exceeds $5,000,000 and the proposed class has at least 100 putative class members. (*Id.* ¶3.) Neither party contests this Court's jurisdiction.

[2] Plaintiff also brought a cause of action pursuant to GBL § 350-a(1). Plaintiff now stipulates that this cause of action be combined with the GBL § 350 claim. (Mem. of Law in Opp. to Def. Mot. to Dismiss ("Pl. Opp.") 13 n.5, ECF No. 41.)

Palmitate Crème; (2) theDerma-e Firming DMAE Moisturizer; and (3) the Derma-e Hydrating Night Crème. (*Id.* ¶ 32.)

Plaintiff asserts that the word "natural," as used by Defendant on the labels and packaging of their cosmetic products, is misleading. Plaintiff posits that the reasonable consumer would understand "natural" to mean that the products do not contain synthetic or artificial ingredients. (*Id.* ¶ 17.) Despite the use of the word "natural," many of Defendants products contain a combination of 22 synthetic and/or artificial ingredients. (*Id.* ¶¶ 7–8.) Accordingly, Plaintiff alleges that the use of the term "natural" on the cosmetic's labels and packaging deceives or misleads the reasonable consumer because a reasonable consumer would understand "natural" to mean "that [the product] does not contain any synthetic or artificial ingredients." (*See id.* ¶¶ 9, 13, 17, 22.)

Further, Plaintiff asserts that Defendant's use of the word "natural" on the cosmetic's labels and packaging induced consumers, including Plaintiff and class members, to pay a premium for the products. (*Id.* ¶ 18.) Specifically, Plaintiff and the class relied on the representation in purchasing the products at a premium price above comparable alternatives that are not represented to be natural. (*Id.*) Such a representation is especially effective because consumers have become increasingly concerned with the effects of synthetic and chemical ingredients in beauty products. Plaintiff alleges that Defendant capitalized on consumer's concerns by marketing their products as being natural when, in fact, they contain a number of synthetic ingredients. (*Id.* ¶¶ 5–6.)  If it had not been for the representation on the labels and packaging, Plaintiff and the class members would not have been willing to purchase the product at that the "premium price." (*Id.*) Plaintiff further posits that Defendant did not disclose that some of the ingredients in their cosmetics are synthetic and/or artificial. (*Id.* ¶ 17.)

Plaintiff alleges that Defendant's deceptive representation and omission are material because a reasonable person would attach importance to such information and would be induced to act upon such information in making purchasing decisions. (*Id.* ¶ 20.) Plaintiff and class members reasonably relied to their detriment on Defendant's misleading representations and omissions. (*Id.* ¶ 22.) Further, these "false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public." (*Id.*) Notwithstanding, "Plaintiff would purchase the Products again if the ingredients were changed so that they indeed were 'Natural.'" (*Id.* ¶¶ 47, 49.)

The "natural" mark, Plaintiff alleges, appears on all of the cosmetic products within the Defendant's "product portfolio" subject to this suit. Further, she alleges that the three products she purchased are substantially and sufficiently similar to the rest of the Defendant's cosmetic products that she did not purchase. The product's similarity, she posits, authorizes her to bring this class action suit on behalf of those similarly situated because Defendant's customers were "uniformly impacted" by Defendant's purportedly misleading labeling. (*Id.* ¶¶ 32, 35.)

Plaintiff claims that she and the alleged class suffered injuries as a result of the representation and omission. Specifically that they: (1) "Paid a sum of money for Products that were not what Defendant represented"; (2) "Paid a premium price for Products that were not what Defendant Represented"; (3) "Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted"; and (4) "Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented." (*Id.* ¶ 24.)

## STANDARD ON A MOTION TO DISMISS

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), dismissal of a case is proper "when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). A plaintiff has the burden of proving subject matter jurisdiction by preponderance of the evidence. *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012); *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova*, 201 F.3d at 113). "'[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison*, 547 F.3d at 170 (quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)).

On a motion to dismiss for "failure to state a claim upon which relief can be granted," pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Ultimately, determining whether a complaint states a facially plausible claim upon which relief may be granted must be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## **DISCUSSION**

Defendant moves to dismiss the Amended Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. The Court takes the arguments and claims in turn. Defendant's motion is denied.

### **I.    Standing**

Defendant asserts that Plaintiff lacks standing to seek prospective injunctive relief and to bring a class action suit with respect to products she did not purchase. (Mem. of Points and Authorities in Supp. of Stearn's Products, Inc.'s Mot. to Dismiss the Amended Compl. ("Def. Mot.") 10–12, ECF No. 40.)

#### a.    Standing to Seek Prospective Injunctive Relief

Plaintiff seeks class-wide injunctive relief pursuant to Federal Rules of Civil Procedure 23(b)(1) and (2). (Compl. ¶ 47.) Defendant argues that injunctive relief is improper because Plaintiff does not allege that she would purchase the products in question again, but rather, that she would only purchase the products again if Defendants changed the ingredients as to make the "natural" label truthful. (Def. Mot. 10–11.) Plaintiff argues that she has standing to seek injunctive relief because a claim for injunctive relief pursuant to New York consumer protection statutes only requires allegations that a product's labeling or marketing is misleading to a reasonable consumer. (Mem. of Law in Opp. to Def. Mot. to Dismiss ("Pl. Opp.") 4, ECF No. 41.)

A plaintiff fulfills the federal constitutional requirements for Article III standing by alleging an actual case or controversy. *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016). In order to satisfy this jurisdictional requirement, "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *Jewish People for the Betterment of Westhampton Beach v. Vill. of Westhampton Beach*, 778 F.3d 390, 394 (2d Cir. 2015)). Plaintiff must demonstrate standing for each claim and form of relief sought. *Id.* A named Plaintiff seeking to represent a class must abide by these same standing requirements. *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).

"A plaintiff lacks standing for injunctive relief where the complaint fails to establish a real or immediate threat of injury." *Izquierdo v. Mondelez International, Inc.*, No. 16-cv-04697 (CM), 2016 WL 6459832, at *5 (S.D.N.Y. Oct. 26, 2016) (quotations and citation omitted). When seeking injunctive relief, Plaintiff may not rely on a past injury, but rather, must "demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia*, 834 F.3d at 239. As both the Supreme Court and Second Circuit articulated, "threatened injury must be certainly impending to constitute injury in fact, and [] [a]llegations of possible future injury are not sufficient." *American Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) (quotations omitted) (citing *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013)); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ("[This] equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a likelihood of substantial and immediate irreparable injury") (quotations and citation omitted).

Taken together, it is abundantly clear that, generally, a Plaintiff who has only suffered past injuries does not have standing under Article III of the federal constitution. The question of whether a Plaintiff seeking injunctive relief for consumer deception "will be able to demonstrate standing where, as here, they allege they would buy the products in the future if not mislabeled" is, however, unsettled in this Circuit. *Podpeskar v. Dannon Company, Inc.*, 16-cv-8478 (KBF), 2017 WL 6001845, at *4 n.2 (S.D.N.Y. Dec. 3, 2017) (collecting cases).

That question is squarely before this Court. Defendant and Plaintiff cite to a series of cases both inside and out of this district. Plaintiff primarily asks the Court to follow the Eastern District of New York's holdings in *Ackerman v. Coca-Cola Co.,* No. 09 CV 395(DLI)(RML), 2013 WL 7044866, at *15, n.23 (E.D.N.Y. July 18, 2013) (report and recommendation) and *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 67 (E.D.N.Y. 2015) which found that Plaintiffs had standing to seek injunctive relief under the New York consumer protection statutes even though they did not convey an intent to purchase the product at issue in the future. Defendant, on the other hand, directs the Court's attention to a series of cases including *Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412, 417–18 (S.D.N.Y. 2015) which explicitly reject *Ackerman* and found that Plaintiff lacked standing to seek injunctive relief because Plaintiff did not allege that they would purchase the product again.

This Court now finds, as it has done before, that a Plaintiff in a consumer protection suit has standing to seek injunctive relief regardless of any promises to purchase the products in questions in the future. Furthermore, "if magic words are required," a Plaintiff certainly has standing when they, as is the case here, assert that they will purchase a product in the future if the ingredients are changed so that the product is not mislabeled. *Goldemberg*, 317 F.R.D. at 397–398 (granting certification of an injunctive class and holding that "if magic words are

required," a Plaintiff's allegation that they would only purchase the product at issue again if the misleading label was corrected was sufficient to confer Article III standing).[3]   In this case, Plaintiff twice conveyed a willingness to purchase Defendant's product when she stated that she "would purchase the Products again if the ingredients were changed so that they indeed were 'Natural.'" (Compl. ¶¶ 47, 49). Although not necessary, this conditional statement sufficiently conveys Plaintiff's intention of purchasing Defendant's products once Defendant changes the ingredients so that the product is not mislabeled. The fact that "Plaintiff would continue to purchase the Products in the future if the misleading labeling is corrected is sufficient to demonstrate an intent to purchase products in the future that subjects them to future harm." *Goldemberg*, 317 F.R.D. at 397 (quotations and citation omitted). Thus, Plaintiff has standing to seek injunctive relief.

b.   Standing as to Unpurchased Products

Defendant next claims that Plaintiff lacks standing to represent a class comprised of some individuals who purchased some of the Defendant's products she did not. (Def. Mot. 11.) Defendant posits that Plaintiff fails to allege facts to suggest that the unpurchased products are

---

[3]This Court's decision to grant standing for injunctive relief in *Goldemberg* stems from the palpable principle that once a consumer learns of an alleged deception, she would, rationally, abstain from purchasing the item. *Goldemberg*, 317 F.R.D. at 397. To hold that Article III standing is barred if a Plaintiff abstains from purchasing an item until the deception is cured would effectively neuter any attempt at seeking class-wide injunctive relief. This Court largely agreed with the decision in *Belfiore* which conveyed this ill-advised result:

> To hold [that plaintiff lacks Article III standing] would denigrate the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated. The only way a consumer could enjoin deceptive conduct would be if [s]he were made aware of the situation by suffering injury. But once the consumer learned of the deception, [s]he would voluntarily abstain from buying and therefore could no longer seek an injunction.

*Belfiore*, 311 F.R.D. at 67 (citation omitted).

substantially similar to the products she purchased especially because the cosmetic products contain varying formulations and ingredients. (*Id.*) Plaintiff retorts by claiming that it is premature for the Court to decide whether Plaintiff has standing to assert claims as to the unpurchased products at the motion to dismiss phase. (Pl. Opp. 5.) The Court agrees with the Plaintiff.

Standing in the class action context requires a bifurcated inquiry. First, Plaintiff must establish the minimum requirements of Article III standing, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), meaning, that "for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 159 (2d Cir. 2012). To demonstrate Article III standing, "a plaintiff must allege (1) an injury in fact (2) fairly traceable to defendant['s] actions that is (3) redressable by the requested relief." *Id.* at 158 (citing *Lujan*, 504 U.S. at 560-61).

Second, following a finding of Article III standing, "the inquiry shift[s] to a class action analysis." *Id.* at 159. A Plaintiff has class standing if she plausibly alleges "(1) that [s]he personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *Id.* at 162 (quotations and citations omitted).

In this case, there is no dispute that Plaintiff has Article III standing to assert claims based on her purchases of Defendant's Derma-e Anti-Wrinkle Vitamin A Retinyl Palmitate Crème, Derma-e Firming DMAE Moisturizer, and the Derma-e Hydrating Night Crème. Instead, Defendant disputes whether Plaintiff has standing to assert claims on behalf of consumers who

purchased other cosmetic products she did not. (Def. Mot. 11–12.) Although it is true that there is disagreement as to whether it is appropriate to determine class standing at the motion to dismiss stage, *see Buonasera*, 208 F. Supp. 3d at 562–63 (collecting cases), this Court is compelled to follow the approach of other decisions in this circuit and the Court's own precedent. [4] *Segovia v. Vitamin Shoppe, Inc.*, 14-CV-7061 (NSR), 2016 WL 8650462, at * 3 (noting that "Once Plaintiffs have satisfied their Article III standing requirements, 'NECA-IBEW thus instructs that . . . their ability to represent putative class members who purchased products plaintiffs have not themselves purchased is a question for a class certification motion'") (citing *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12–MD–2413 (RRM)(RLM), 2013 WL 4647512, at *12 (E.D.N.Y. Aug. 29, 2013)); *Segedie v. Hain Celestial Group, Inc.*, No. 14–cv–5029 (NSR), 2015 WL 2168374, at *11 (S.D.N.Y. May 7, 2015) (declining to address class standing at the motion to dismiss stage and noting that the Court would address the issue at a later time); *Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*, 148 F. Supp. 3d 285, 296–97 (S.D.N.Y. 2015) ("But because the parties have not yet had the opportunity to conduct discovery about whether [Plaintiff's] injuries 'implicate[ ] the 'same set of concerns' as the conduct alleged to have caused injury to other members of the putative class,' [Defendant's] motion to strike the class allegations is denied as premature. [Defendant] may re-assert these arguments, if applicable, at the class certification stage."); *Ault v. J.M. Smucker Co.*, No. 13 Civ 3409, 2014 WL 1998235, at *7 (S.D.N.Y. May 15, 2014) (finding that the issue of class standing is a question the Court will consider on a Rule 23 certification motion); *see also Moses v. Apple*

---

[4] Defendant cites to *Goldemberg v. Johnson & Johnson Consumer Co., Inc.*, 317 F.R.D. 374 (2016) where this Court analyzed whether Plaintiff had class standing. Defendant asserts that *Goldemberg* stands for the proposition that a class standing analysis should likewise be taken in this case. The Court declines to do so. *Goldemberg* required the class standing analysis because in that case, unlike here, a motion for class certification was before the Court.

*Hospitality REIT Inc.*, 14-CV-3131 (DLI)(SMG), 2016 WL 8711089, at *4 (E.D.N.Y. Sept. 30, 2016) (holding that "[s]ince Plaintiff has Article III standing, the more prudent approach is to analyze class standing at the class certification stage because the Plaintiff has already established a case or controversy between the parties"). Thus, since the parties do not dispute Plaintiff's Article III standing, the Court defers consideration of the class standing question to the class certification stage.[5]

## II.     Claims under New York General Business Law §§ 349 and 350

Defendant argues that Plaintiff's GBL §§ 349 and 350 claims should be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants first argue that Plaintiff fails to allege sufficient facts to show that the products at issue are not "natural" and that as a result, all causes of actions should be dismissed. (Def. Mot. 13.)

Second, the Defendant attacks each of Plaintiff's claims individually. Defendant argues that even if Plaintiff's definition of natural is reasonable, she still fails to plead sufficient factual allegations supporting a finding that Defendant engaged in a "deceptive act" under GBL § 349. (Def. Mot. 19.)  Defendant also argues that Plaintiff failed to allege the likelihood of a deceptive act because Plaintiff's definition of "natural" is unreasonable under § 350. Plaintiff retorts by claiming that Defendant essentially seeks a finding that as a matter of law no reasonable consumer could be misled into believing that the product is "all natural" or "100% natural" and that natural is a "non-actionable subjective statement." (Pl. Opp. 9.) Further, Plaintiff argues that

---

[5] It bears noting that this Court performed a cursory analysis of the class standing inquiry in *Segovia* in order to distinguish the findings in *DiMuro v. Clinique Labs., LLC,* 572 F. App'x. 27 (2d Cir. 2014) (sum. order). *See Segovia*, 2016 WL 8650462, at *3. Such an analysis is not warranted here.

the Complaint clearly identifies and describes the alleged misrepresentation on the label, and that there is "simply nothing implausible about the assertion that Defendant knew its 'natural' claim was false." (Pl. Opp. 12.)

Defendant essentially asks this Court to make a finding that Plaintiff's interpretation of the term "natural" is unreasonable, that Defendant's products are actually natural, and that Plaintiff did not make sufficient factual allegations to support the plausibility of a deceptive act. The Court declines such a finding. Defendant's motion is denied because Plaintiff properly plead that Defendant engaged in a deceptive act and the Court cannot find that Plaintiff's definition of "natural" is unreasonable as a matter of law at this juncture.

New York's GBL §§ 349 and 350 prohibit "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state" and materially misleading advertising, respectively. GBL §§ 349(a), 350. To recover under GBL § 349, a plaintiff must prove "that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675 (2012).

While GBL § 350 relates specifically to false advertising, "the standard for recovery under § 350 . . . is otherwise identical to section 349." *Goshen v. Mut. Life Ins. Co. Of N.Y.*, 774 N.E.2d 1190, 1195 n.1 (2002); *see also Koch v. Greenberg*, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014) (noting that a claim under GBL § 350 has the additional requirement that it relate to false advertising) (citing *Andre Strishak & Associates, P.C. v. Hewlett Packard Co.*, 752 N.Y.S.2d 400, 403 (2d Dept. 2002)), *aff'd*, 626 F. App'x 335 (2d Cir. 2015) (summ. order). "False advertising" is defined by the GBL as "advertising, including labeling." GBL § 350-a. A Plaintiff need not prove reliance on the alleged false advertising under GBL § 350. *Koch*, 967 N.E.2d at

676 ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law §§ 349 and 350 claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim."); *Segovia*, 2017 WL 6398747, at *3 n.1.

As a preliminary matter, the Court need not find whether Defendant's products are "natural" within any given definition. General Business Law §§ 349 and 350 employs an objective standard under which a fact finder must find if the "natural" label, is misleading to a reasonable consumer acting reasonably. *Ault*, 2014 WL 1998235, at *5 (citing *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007)). Plaintiff need not establish whether the product is not "natural" but rather, if a reasonable consumer acting reasonably would be misled. Therefore, since GBL §§ 349 and 350 employ an objective standard, Defendant's argument that Plaintiff did not provide sufficient factual allegations to show that their product was not natural fails.

Next, this Court cannot find at this stage that Plaintiff's definition of "natural" is unreasonable as a matter of law. As this Court has previously stated, "[i]t is not unreasonable as a matter of law to expect that a product labeled 'natural' or 'all natural' contains only natural ingredients." *Segedie*, 2015 WL 2168374, at *11. This is true even if mildly qualifying language or synthetic ingredients are listed on the product's packaging. *See id.* Therefore, Plaintiff must only alleged "that 'natural' communicates the absence of synthetic ingredients." *Id.* Defendant's argument fails for the same reasons expressed in *Segedie*. Here, like in *Segedie*, Plaintiff provided a definition for the term "natural," and alleged that the term means that a product is free of synthetic ingredients. (Compl. ¶ 11.). Accordingly, the Court cannot find that it is unreasonable as a matter of law for a person to expect that a product labeled "natural" contain

only non-synthetic ingredients. Ultimately, the question is one of reasonableness and cannot typically be resolved on a Rule 12(b)(6) motion. *Id.* Defendant's motion is denied.

Next, Defendant's claim that Plaintiff did not sufficiently plead a deceptive act or scheme also fails. Section 349 is "directed at wrongs against the consuming public," *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (1995), and was enacted to protect consumers from sellers' deceptive practices. *Id.* "A 'deceptive act' or 'false advertisement' is a material statement that is 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Ault*, 2014 WL 1998235, at *5 (citing *Cohen*, 498 F.3d at 126); *Food Parade, Inc. v. Office of Consumer Affairs of Cty. of Nassau*, 859 N.E.2d 473, 477 (2006). This is an objective test, *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 287 (S.D.N.Y. 2014), and courts "view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Delgado v. Ocwen Loan Servicing, LLC*, No. 13–CV–4427 (NGG)(RML), 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24, 2014) (citation and quotation marks omitted). "The entire mosaic" is "viewed rather than each tile separately." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, No. 06 Civ. 14245(LTS)(MHD), 2007 WL 1138879, at *4 (S.D.N.Y. Apr. 16, 2007) (citation omitted). Moreover, "[i]ntent to defraud and justifiable reliance by the plaintiff are not elements of the statutory claim." *Small v. Lorillard Tobacco Co., Inc.*, 720 N.E.2d 892, 897 (1999); *accord Oscar v. BMW of North America, LLC*, 274 F.R.D. 498, 512 (S.D.N.Y. 2011).

Plaintiff properly pleaded that Defendant committed a deceptive act by labeling their products "natural" despite having synthetic ingredients. Here, a reasonable consumer acting reasonably very well could be misled because they could conclude that the "natural" label on the cosmetics means that they are made with all natural products. *See Goldemberg*, 8 F. Supp. 3d at

479–80 (noting that the Court could not hold as a matter of law that a label touting Defendant's products as "All Natural" was not misleading). Here, Plaintiff alleges that Defendant's labeling of their products as being "natural" is misleading in a material way because the product contains synthetic ingredients, and the label induced Plaintiff and class members to purchase and pay a premium for Defendant's products and to use the Products when they otherwise would not have. (Pl. Opp. 13.) Further, Plaintiff alleged that Defendant sought to capitalize on consumer trends related to the use of natural products and therefore advertised their products as "natural." Plaintiff also alleges that Defendant placed the label on their products despite knowing that they contained synthetic ingredients. The Court finds that these asserted allegations are sufficient to state a claim upon which relief can be granted because if accepted as true, would suggest that a reasonable consumer acting reasonably would be misled by the term "natural" on a product's label, despite the product containing synthetic ingredient. The question of whether Defendant's label is actually misleading to a reasonable consumer as a matter of law, however, is a question of fact better suited for the jury. *Buonasera*, 208 F. Supp. 3d at 566. Defendant's motion is denied.[6]

---

[6] Defendant also asserts that the term "natural" is mere puffery, and is not an actionable statement. This argument is rejected. "Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language." *Kacocha v. Nestle Purina Petcare Company*, 2016 WL 4367991, at *16 (S.D.N.Y. Aug. 12, 2016) (quotations and citation omitted). The Court is not convinced that the term "natural" on the cosmetic's labels and packaging can be construed as mere puffery. The term "natural" is an affirmative claim about a product's qualities and is, therefore, not "an exaggeration or overstatement expressed in broad, vague, and commendatory language." *C.f. Ault*, 2014 WL 1998235, at *6 (holding that Defendant's labeling of their product as "All Natural" is an actionable warranty); *see also ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009) (noting that "puffery" includes "statements [that] are too general to cause a reasonable investor to rely upon them").

### III.    Breach of Express Warranty Claim

Defendant argues that this claim should be dismissed because Plaintiff did not properly plead the privity and pre-suit notice elements of a breach of express warranty claim and that "natural" is not an actionable warranty. (Def. Mot. 21–22.)  Plaintiff argues that privity is not a required element, that pre-suit notice was given, and that "natural" is an actionable warranty. (Pl. Opp. 14–18.) Defendant's motion is granted because Plaintiff did not sufficiently plead that they provided proper notice to the Defendant.

To state a claim for breach of express warranty in New York, "'a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach.'" *In re Scotts EZ Seed Litigation*, 304 F.R.D. 397, 410 (S.D.N.Y. 2015) (citing *Goldemberg*, 8 F. Supp. at 482)).

To recover on a breach of warranty claim under New York law, the buyer of the allegedly mislabeled product "must within a reasonable time after [s]he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." N.Y. U.C.C. § 2-607(3)(a). To satisfy the pre-suit notice requirement "the notice given by plaintiff had only to 'alert [defendant] that the transaction [was] troublesome and [did] not need to include a claim for damages or threat of future litigation.'" *Cliffstar Corp. v. Elmar Industries, Inc.*, 678 N.Y.S.2d 222, 223 (4th Dept. 1998) (citing *Computer Strategies v. Commodore Bus. Machs.*, 483 N.Y.S.2d 716, 723 (2d Dept. 1984)).  "[R]equiring notice is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." N.Y. U.C.C. § 2–607 cmt. 4. "[T]he sufficiency and timeliness of the notice is generally a question for the jury." *Sullivan v. Aventis, Inc.*, No. 14–cv–2939–NSR, 2015 WL 4879112, at *8 (S.D.N.Y. Aug. 13, 2015) (citing

*Tomasino v. Estee Lauder Cos. Inc.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014)). "New York cases applying N.Y. U.C.C. § 2–607(3) suggest that a plaintiff's pleadings may constitute reasonable notice in certain cases." *Tomasino*, 4 F. Supp. 3d at 261 n.6.

Plaintiff alleges that they placed Defendant on pre-suit notice. Specifically, the complaint states that within "a reasonable time after they knew or should have known of Defendant's breach, Plaintiff, on behalf of herself and Class Members, placed Defendant on notice of its breach, giving Defendant an opportunity to cure their breach, which they refused to do." (Compl. ¶ 91.) This allegation, alone, is insufficient to plead pre-suit notice. Plaintiff must provide factual allegations, as opposed to conclusory statements, supporting the contention she notified Defendant of the alleged breach within a reasonable time after discovering them. *Tyman v. Pfizer, Inc.*, No. 16 CV 6941 (LTS)(BCM), 2017 WL 6988936, at *22 (S.D.N.Y. Dec. 27, 2017), *report and recommendation adopted* at 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018); *see also In re Frito-Lay*, 2013 WL 4647512, at *27 (dismissing Plaintiff's breach of warranty claim because Plaintiff "fail[ed] to allege in the First Amended Complaint that they even provided sufficient notice to defendants of their express warranty claims under Florida and New York law, let alone notice within a reasonable time after discovery of a breach"). Proper factual allegations should, at least, include the date and method by which Plaintiff afforded such notice to Defendant. Consequently, because Plaintiffs failed to allege any facts supporting the allegation that that she notified Defendant of the alleged breach within a reasonable time after its discovery, Defendant's motion to dismiss is granted, without prejudice. Plaintiff is granted leave to amend in order to repair this deficiency. *See Tyman*, 2017 WL 6988936, at *23 (granting leave to amend breach of express warranty where pleading may be curable by amendment).

## IV.    Punitive Damages

Defendant claims that Plaintiff has not offered sufficient factual allegations to support a claim for punitive damages under GBL § 349. (Def. Mot. 23–24.) Plaintiff argues that punitive damages are commonplace for GBL § 349 cases and that she plead sufficient factual allegations to support such a claim. (Pl. Mot. 18–19.)

The New York Court of Appeals has stated that "[a]mong the remedies available to private plaintiffs [under GBL § 349] are compensatory damages, limited punitive damages and attorneys' fees." *Karlin v. IVF America, Inc.*, 712 N.E.2d 662, 666 (1999) (citing GBL § 349(h)); *see also Guzman v. Harris*, 16-CV-3499 (GBD) (RLE), 2017 WL 4386369, at *4 (S.D.N.Y. Sept. 29, 2017) ("[a]s the court in *Karlin*, observed, private plaintiffs with GBL § 349 claims may recover only compensatory damages, limited punitive damages and attorneys' fees") (quotations and citation omitted). New York appellate courts have acknowledged that a Plaintiff may seek punitive damages "in the context of a cause of action predicated upon an alleged violation of General Business Law § 349." *Ural v Encompass Ins. Co. of America*, 948 N.Y.S.2d 621, 625 (2d Dept. 2012) (citing *Wilner v Allstate Ins. Co.*, 893 N.Y.S.2d 208, 218 (2d Dept. 2010)). Generally, an "award of punitive damages is warranted where the conduct of the party being held liable evidences a high degree of moral culpability, or where the conduct is so flagrant as to transcend mere carelessness, or where the conduct constitutes willful or wanton negligence or recklessness." *Pellegrini v Richmond Cnty. Ambulance Serv., Inc.*, 851 N.Y.S.2d 268, 269 (2d Dept. 2008) (quotations and citation omitted).

Defendant's motion to dismiss Plaintiff's prayer for punitive damages pursuant to GBL § 349 is denied. Plaintiff alleged sufficient facts to support a claim for punitive damages at this stage and the text of GBL § 349, as well the related jurisprudential interpretations, permits, at a

minimum, limited punitive damages.[7]  In this case, Plaintiff alleges that Defendant's products are

marketed as "natural" when they, in fact, contain synthetic ingredients. The reasonable

consumer, acting reasonably, may expect a "natural" product to be free of synthetic ingredients.

Plaintiff further alleges that Defendant intentionally marketed the products as "natural" in order

to induce consumers to pay a price premium for the cosmetics. At the motion to dismiss stage,

Plaintiff's allegations, accepted as true, evinces the plausibility of "conduct [that] is so flagrant

as to transcend mere carelessness" because under these facts, it is plausible that Defendant's use

of the word "natural" on their labels and packaging, despite using synthetic ingredients in their

products, was more intentional than careless. *See Ural*, 948 N.Y.S.2d at 625; *Wilner*, 893

N.Y.S.2d at 218 (denying motion to dismiss punitive damages because Plaintiff alleged that

Defendant's acted intentionally in order to induce a particular result); *compare with Bracken v.

MH Pillars Inc.*, 15 Civ. 7302 (RA) (GWG), 2017 WL 5901015, at *6 (S.D.N.Y. Nov. 29, 2017)

(denying punitive damages because Plaintiff solely made conclusory allegations).  Thus,

Defendant's motion is denied.

## **MOTION TO STAY**

Defendant moves to stay all remaining claims pursuant to the primary jurisdiction

doctrine. (Def. Points and Auth. in Supp. of Mot. to Stay ("Def. Mot. Stay"), 4, ECF No. 34.)

---

[7] Although it appears that there is a question regarding whether GBL § 349 allows for traditional punitive damages or strictly limited punitive damages, it is not necessary to reach that issue at this stage because the parties did not address it and the standard for each is the same. *Bracken v. MH Pillars Inc.*, 15 Civ. 7302 (RA) (GWG), 2017 WL 5901015, at *6 (S.D.N.Y. Nov. 29, 2017) ("it is not necessary to reach this issue because, where punitive damages are permitted, it is only where the conduct of the party being held liable evidences a high degree of moral culpability, or where the conduct is so flagrant as to transcend mere carelessness, or where the conduct constitutes willful or wanton negligence or recklessness") (quotations and citations omitted); *see also Molgora v. Sharinn & Lipshie, P.C.*, 17-CV-03766 (SN), 2018 WL 739581, at *1 (S.D.N.Y. Feb. 6, 2018) (noting the dispute concerning availability of punitive or limited punitive damages under § GBL 349).

Defendant argues that the Court should stay this case because the FDA opened a pre-rule making docket to obtain information and comments regarding the use of the term "natural" in the labeling of human food products. (*Id.* at 2.) Defendant posits that because the Food and Drug Administration ("FDA") has primary jurisdiction over claims concerning the meaning of the word "natural" in the cosmetics sphere, this Court should stay the present case in anticipation of the definition of the term "natural" with regards to human food products. Defendant's Motion to Stay is denied.

"The primary jurisdiction doctrine is relatively narrow in scope." *Segedie*, 2015 WL 2168374, at *13 (quotations omitted) (quoting *In re Frito–Lay*, 2013 WL 4647512, at *7). This doctrine "is concerned with 'promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.'" *Ellis v. Tribune Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956)). Courts generally consider four factors: "(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made." *Ellis*, 443 F.3d at 82–83. Primary jurisdiction is properly applied "whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Id.* (quoting *W. Pac. R.R. Co.*, 352 U.S. at 64). When applicable, "a court defers to the agency for advisory findings and either stays the pending action or dismisses it without prejudice," being careful not to disadvantage either party. *Johnson v. Nyack Hosp.*, 86 F.3d 8, 11 (2d Cir. 1996).

Defendant's motion is denied because the primary jurisdiction doctrine does not bar the Court from entertaining the present case. With respect to the first factor, it is well settled that the doctrine does not apply when "the issue at stake is legal in nature and lies within the traditional realm of judicial competence." *Goya Foods, Inc. v. Tropicana Products, Inc.*, 846 F.2d 848, 851 (2d Cir. 1988) (collecting cases). The present case is "far less about science than it is about whether a label is misleading, and the reasonable-consumer inquiry upon which some of the claims in this case depends is one to which courts are eminently well suited, even well versed." *In re Frito-Lay*, 2013 WL 4647512, at *8 (quotations and citations omitted); *Goldemberg*, 8 F. Supp. 3d at 476 (finding that whether the use of the term "Active Naturals" is deceptive or misleading is a question which courts are well suited to entertain); *Ault*, 2014 WL 1998235, at *5 (finding that the primary jurisdiction doctrine does not apply because "[t]he issue is whether the use of the phrase 'All Natural' was likely to mislead a reasonable consumer acting reasonably under the circumstances) (quotations and citation omitted). Determining whether a reasonable consumer acting reasonably would find the term "natural" deceptive when a product contains both natural and synthetic ingredients is a question this Court and Jury are well suited to entertain. *Goldemberg*, 8 F. Supp. 3d at 476–77. Accordingly, this factor weighs against applying the primary jurisdiction doctrine.

Turning to the second factor, determining the definition of "natural" as "used in cosmetics labeling is undeniably within the FDA's discretion, as the agency is charged with ensuring product safety, 21 U.S.C. § 393(b)(1)-(2), and may promulgate regulations accordingly, *id.* § 371(a)." *Goldemberg*, 8 F. Supp. 3d at 477. The FDA also has discretion to determine whether a label is misleading. 21 U.S.C. § 632(a). Accordingly, this factor weighs towards applying the primary jurisdiction doctrine.

The third and fourth factor, however, weigh against applying the primary jurisdiction doctrine. A risk of substantial danger of inconsistent rulings does not exist because Plaintiff's claims do not require a finding of what "natural" means. Rather, the claims ask whether a reasonable consumer acting reasonably would be misled by a label displaying the word "natural" when the product contains synthetic ingredients. In any event, Defendant's requests to stay the case pending the FDA's definition of "natural" with regards to human food products would not be particularly helpful. (Def. Mot. Stay 1.) As instructive as that definition may be, it ultimately involves a significantly different subject matter, namely, food products instead of cosmetics. *See Segedie*, 2015 WL 2168374, at *13 ("There is little danger of inconsistent rulings because the [FDA] is not 'contemplating the same issue'"). Further, as both parties note, the FDA has not promulgated a formal rule or policy explaining when cosmetics may be labeled "natural." Moreover, although a FDA-created definition of the term "natural" with regards to cosmetics would be helpful, and is certainly welcomed, it is not necessary for the purposes of this case. *See In re Frito-Lay*, 2013 WL 4647512, at *8 ("There is no telling, if [the FDA] even chose to respond with any directive to the Court's referral, how the FDA would define the term ['natural'], and whether its definition would shed any further light on whether a reasonable consumer is deceived by the 'All Natural' food label when it contains bioengineered ingredients"). The third factor, then, weighs against applying the doctrine.

Turning to the fourth, and final, factor, Defendant asserts that "citizens and Federal district courts have petitioned the FDA for guidance on the term 'natural' on cosmetics." (Def. Mot. Stay. 8.) Additionally, many of the comments the FDA received concerning the use of the term "natural" with respect to human food products also contain comments regarding cosmetics. *Id.* This argument is unavailing. Second Circuit precedent is clear. If a prior application to the

FDA is present, this factor weighs in favor of a stay. On the other hand, if prior application to the

FDA is absent, this factor may weigh against the stay. *Ellis*, 443 F.3d at 89. In this case,

Defendant makes no indication that an application to the FDA was made.[8] Therefore, this factor

weighs against the doctrine's application. *See id.*

Accordingly, as most factors weight against applying the doctrine of primary jurisdiction,

the Court declines to stay the instant case. Defendant's motion is denied.

---

[8] Defendant argues that various requests were made to the FDA by several United States District Courts for a definition of "natural" with respect to cosmetic products (Def. Mot. Stay. 8.) and cites to *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 761 (9th Cir. 2015) for support. Those requests were answered, as the Ninth Circuit noted, when the FDA "decline[d] to make a determination at that time with respect to labeling genetically engineered ingredients as 'natural.'" *Id.* (quotations and citation omitted). Defendant asks this Court to disregard the FDA's answer and instead stay the case, pending the FDA's definition of "natural" in human food products. The Court declines to do so because despite the informative nature of such a definition, the FDA is not contemplating the same issue presented in this case and there are no factual allegations to support the conclusion that an application concerning the use of the term "natural" with respect to cosmetics is before the FDA. *See Ault*, 2014 WL 1998235, at *6 ("While any FDA views on what 'natural' means may be relevant to this inquiry, they are not dispositive") (citations omitted).

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is denied in part and granted in part without prejudice, and with leave to amend the breach of express warranty claim in conformity with this opinion. The Clerk of Court is respectfully requested to terminate the motions at ECF Numbers 33 & 34.

Plaintiff is directed to file an Amended Complaint in conformity with the above on or before April 20, 2018. Failure to timely file an Amended Complaint will result in the dismissal of the breach of express warranty claim. Defendant shall answer or seek a pre-motion conference on any potential motions to dismiss by May 11, 2018.

An in-person Initial Pre-trial Conference is scheduled for May 25, 2018 at 12:30 p.m., at the United States Courthouse, 300 Quarropas Street, Courtroom 218, White Plains, New York 10601. The parties shall confer in accordance with Fed. R. Civ. P. 26(f) at least 21 days prior to the conference and attempt in good faith to agree upon a proposed discovery plan that will ensure trial readiness within six months of the conference date. The parties shall also complete a Civil Case Discovery Plan and Scheduling Order, submit the plan to the Court prior to May 25, and bring it to the conference.

Dated:    March 30, 2018                              SO ORDERED:
          White Plains, New York

                                                      NELSON S. ROMÁN
                                                      United States District Judge

25